**People of the State of Illinois ex rel. John F. Bolton, Jr., Director of Insurance of the State of Illinois, Plaintiff-Appellee, v. Progressive General Insurance Company, an Illinois Corporation, Defendant-Appellant.**

Gen. No. 52,054.

First District, Second Division.

May 23, 1967.

Rehearing denied and opinion modified July 5, 1967.

Thomas P. Sullivan, Robert E. Pfaff and Hugh M. King, and George B. Collins, of Chicago (Raymond, Mayer, Jenner & Block, of counsel), for appellant.

William G. Clark, Attorney General, of Springfield, Lee A. Freeman and Jerome H. Torshen, Special Assist-

ant Attorneys General, of Chicago (McConnell, Freeman, Curtis & McConnell, of counsel), for appellee.

MR. JUSTICE BRYANT delivered the opinion of the court.

This is an appeal from an interlocutory order of the Circuit Court of Cook County restraining Progressive General Insurance Company (hereinafter referred to as Progressive General) from engaging in the following activities: opening bank accounts other than those already in existence and from dissipating present bank accounts; pledging premiums due on policies issued by the company; making payments of advance commissions in any manner whatsoever in connection with such policies; transferring property, funds or securities from Progressive General; from making disbursements other than in the ordinary and normal course of business for the payment of claims and for the maintenance of general and administrative functions; converting or pledging any assets and from increasing any salaries or expense accounts.

The issue presented on this appeal is whether the chancellor erred in entering the injunction against Progressive General. Defendant claims that it was error for the chancellor to have issued an injunction because there was no urgency, and because the injunction was based on an outdated record and changed the status quo.

The facts leading up to the issuance of the injunction are as follows: In September 1964, the then Director of Insurance, Harry B. Hershey, was appointed liquidator of Multi-State Inter Insurance Exchange. In August, 1965, John Bolton, successor to Mr. Hershey, as Liquidator of Multi-State, filed an action against the present defendant, Progressive General, and other defendants in which he sought money damages against Progressive General, all of Progressive General's stock, and the ap-

111

pointment of a receiver for Progressive General pending disposition of the case. The largest claim for damages against Progressive General arose out of the cancellation of a contract between Multi-State and Progressive General.

Hearings were held before the chancellor during September 1965 on the motion for the appointment of a common-law receiver pendente lite. Progressive General moved to dismiss the motion for receiver upon the ground that section 201 of the Illinois Insurance Code expressly prohibits appointment of common-law receivers for domestic insurance companies. The chancellor denied this motion whereupon Progressive General filed an original petition for writ of mandamus in the Supreme Court of Illinois.

Before Progressive General's brief on the merits in the mandamus case was filed, the present action against Progressive General was instituted by the Director of Insurance, John Bolton, seeking appointment of himself as rehabilitator of the defendant, as well as an injunction as provided by section 801 of the Insurance Code. The chancellor referred the cause of action to Master in Chancery, Louis M. Friedman.

On November 17, 1965 the master's original and supplemental reports were filed with the chancellor. The master found several serious violations of the Illinois Insurance Code, but refused to recommend the issuance of an injunction. Some of the more serious violations are as follows:

(1) Loans in the aggregate amount of $812,000 were made indirectly to Charles Hoffman, personally, as president of Progressive General by Progressive General in violation of Insurance Code, section 124.2.

(2) Immediately prior to the issuance of quarterly reports by Progressive General, Hoffman secured

bank loans, which aggregated close to $1,000,000, executed by Progressive Agency and secured by all of the uncollected premiums due to Progressive General on policies outstanding, in violation of section 505 of the Insurance Code.

(3) The master found that misleading financial statements were issued by Progressive General.

(4) The master found that premiums were transmitted in bulk instead of being identified to individual policies in violation of Rule 9.08 of the Department of Insurance.

(5) The arrangement between Progressive General and its sole agency was found to be that of an *exclusive* (emphasis added) agency but the agreement establishing that relationship had not been submitted to the Director for approval as required by section 141 of the Insurance Code.

(6) Progressive Agency failed to obtain a license to operate as an agency, but so operated in 1964. Charles Hoffman countersigned all insurance policies as a licensed registered agent although not so licensed.

Following the filing of the master's report, counsel for the Director appeared before the chancellor and urged the court to hear his exceptions to the master's reports in order to secure the issuance of an injunction. The chancellor was unable to hear arguments on the exceptions at that time. Counsel for the Director then brought to the chancellor's attention the fact that the master had found that books and records had been improperly withheld from the Director's examination and by reason of this withholding a final determination on insolvency had been postponed. The Director then petitioned the court to issue an order requiring Progressive General and its sole general agency to produce such books and records. Pursuant to that petition and as a result of discussion

between the parties an order was entered appointing Arthur Andersen & Company to examine all books and records. The Andersen report was filed with the chancellor on February 18, 1966. Following the filing of this report the chancellor from time to time successively continued the case on his own motion from February 18 to March 28, to June 2 and to June 27. During this period the plaintiff took several depositions in Georgia and in Chicago. Defendant also gave notice for taking depositions but failed to take the depositions. On October 26, and November 9, 1966, arguments were presented to the chancellor on exceptions to the master's reports. On February 3, 1967, the chancellor issued an order containing the injunction sought by the plaintiff.

Defendant contends on this appeal that the trial court erred in issuing this injunction. His first argument is that no emergency existed which would justify the issuance of the injunction. Defendant cites as evidence of the lack of urgency, the fact that there was a ten month delay between the issuance of the master's report and the presentation by plaintiff of his exceptions to that report.

■ It is, of course, clear that a temporary or preliminary injunction is an extraordinary remedy that will be granted in an emergency situation. Naxon Telesign Corp. v. Selig, 38 Ill App2d 242, 186 NE2d 666; County of Du Page v. Robinette, 77 Ill App2d 167, 221 NE2d 769. It has been held that a delay of even a few months in seeking injunctive relief is indicative of such a lack of urgency as to preclude the issuance of an injunction. The cases supporting this proposition are not applicable to the present situation, however. In Naxon Telesign Corp. v. Selig, supra, it was held that it was not error to have denied plaintiff's prayer for a temporary injunction where such prayer was not made until nearly one year after the suit was commenced.

■ In this case the Director's motion for an injunction pursuant to chapter 73, section 801, Ill Rev Stats,

1965, was made at the commencement of the suit against Progressive General. Delay in the order granting the injunction was not due to any tardiness by the plaintiff in seeking the injunction, but was due to circumstances which were beyond the control of the plaintiff.

Defendant also contends that grounds for granting interlocutory relief were destroyed by events which rendered the record stale and outdated and destroyed the validity of the master's findings.

■ It is well settled law in Illinois that the trial court is vested with large discretionary power in granting an order for a temporary injunction. The effect of section 78 of the Civil Practice Act relating to appeals to this court from interlocutory orders concerning injunctions, is to permit a review of the exercise of the discretion lodged in the chancellor in order to determine whether the interlocutory order probably was necessary to maintain the status quo and preserve the equitable rights of the parties, and unless we find that the chancellor's discretion has been abused the interlocutory order will not be reversed or set aside. Weingart v. Weingart, 23 Ill App2d 154, 161 NE2d 714; O'Brien v. Matual, 14 Ill App2d 173, 144 NE2d 446.

■ ■ It is not necessary for the Department of Insurance, in seeking an injunction before the trial on the merits of the issues, to make out a case which would entitle the department to the judgment prayed for, nor did the complaint have to be of the character needed to obtain a final and permanent injunction. It was only necessary that the complaint raise a fair question as to the existence of the right claimed, so as to lead the court to believe that the plaintiff would probably be entitled to the relief prayed for if its proof should sustain its allegations, and make it appear advisable that the positions of the parties should stay as they were until the court had the opportunity to consider the case on its merits. Twin City Barge & Towing Co. v. Licensed Tugmen's &

Pilots' Protective Ass'n of America, 48 Ill App2d 1, 197 NE2d 749; Capitol Records, Inc. v. Vee Jay Records, Inc., 47 Ill App2d 468, 197 NE2d 503; O'Brien v. Matual, supra.

[8] While Progressive General maintains that five of the plaintiff's major claims of violations of the Insurance Code and the Regulations of the Department of Insurance had been corrected or were shown to be nonexistent, it is our feeling that the plaintiff made out a sufficient case for an injunction until the trial court has made a determination on the merits on the issue of the existence or nonexistence of the alleged violations. From our examination of the record it is clear that there was sufficient evidence to raise a fair question as to the need to grant an injunction to protect the public from the possible waste or dissipation of the assets of the defendant. Nothing said herein should be construed as controlling in the case in chief.

 Defendant lastly claims that the issuance of the injunction was error because it upset the status quo. We have already set forth the terms of the injunction issued against the defendant. In the main that injunction merely provided that Progressive General is to maintain present bank accounts, and to refrain from transferring property, funds or securities, and from making disbursements other than in the ordinary course of business. On its face it is obvious that the injunction does no more than maintain Progressive General in the position it was in when the injunction was issued. Moreover, the statute on which this injunction is based provides for essentially the same restraints as are included in the chancellor's order. The relevant section is as follows:

Chapter 73, section 801, Ill Rev Stats, 1965

"The court shall have jurisdiction, upon, or at any time after the filing of the complaint to issue an injunction restraining such company and its officers,

116

agents, directors, employees and all other persons from transacting any company business or disposing of its property until the further order of the court. The court may issue such other injunctions or enter such other orders as may be deemed necessary to prevent interference with the proceedings, or with the Director's possession and control or title, rights or interests as herein provided or to prevent interference with the conduct of the business by the Director, and may issue such other injunctions or enter such other orders as may be deemed necessary to prevent waste of assets or the obtaining of preferences, judgments, attachments or other like liens or the making of any levy against such company or its property and assets while in the possession and control of the Director . . . ."

For these reasons the order granting the injunction is affirmed.

Order affirmed.

LYONS, P. J. and BURKE, J., concur.