(No. 41046.—

THE PEOPLE *ex rel.* John F. Bolton, Jr., Director of Insurance, Appellee, *vs.* PROGRESSIVE GENERAL INSURANCE COMPANY *et al.*—(Charles Hoffman, Jr., *et al.,* Appellants.)

*Opinion filed Nov. 26, 1969.—Modified on denial of rehearing, March 23, 1970.*

Ward, J., took no part.

George B. Collins, of Chicago, for appellants.

Jerome H. Torshen, of Chicago, for appellee.

Mr. Chief Justice Underwood delivered the opinion of the court:

This is an appeal from summary judgments entered in

an action by the People of the State of Illinois upon the relation of the Director of Insurance as Rehabilitator, during the course of proceedings for rehabilitation of Progressive General Insurance Company (a nonappealing defendant) by defendants Charles Hoffman, Jr. and Automatix, Inc. Upon petition of the Rehabilitator, an order was entered against Hoffman and Automatix for a "turn over" of certain funds and accounts receivable, including premium trust funds of $255,808.32. Judgment was entered against both for that amount. Constitutional questions raised by appellants give us jurisdiction.

Progressive, an Illinois corporation, was controlled by Hoffman until the Director was appointed Rehabilitator on May 19, 1967. Progressive General Agency, Inc., owned by Insurors Holding Corp., which, in turn, was owned by Hoffman's wife, acted as general agent for Progressive until July, 1965. Automatix, also owned by Hoffman, then became general agent. Thus, Hoffman or his wife owned controlling interests in all the companies and Hoffman had complete control and managed all of them.

The rehabilitation proceedings were commenced in October, 1965. Various irregularities were charged in the management of Progressive and the general agencies, including improper use of premium funds, conflict of interest payments to Hoffman, refusal to produce Progressive Agency's books for examination and publication of false and misleading statements in regard to Progressive's financial condition. On February 3, 1967, an order was entered restraining Progressive and its personnel from making disbursements other than in the ordinary and normal course of business, and restraining them from transferring, pledging, or converting any asset of Progressive without prior approval of the court. An appeal was taken from the injunction order by Progressive resulting in an affirmance of the trial court. *People ex rel. Bolton* v. *Progressive General Insurance Co.*, 84 Ill. App. 2d 109.

On May 19, 1967, the trial court found that Hoffman had been convicted in the United States District Court for manipulation of Multi-State Inter-Insurance Exchange. The conviction, in conjunction with the entire record showing violation of the law and the Insurance Code by Hoffman and Progressive and the manipulation of assets, was held to constitute sufficient cause for the rehabilitation (taking over) of Progressive. The trial court's order directed the Director to take possession of the property and business of Progressive and its subsidiaries, to proceed to conduct the business of Progressive, and to rehabilitate it.

Before proceeding further, it is appropriate to consider the claim that Automatix was not before the court and that judgment should not have been entered against it. It is contended that judgment against it was a violation of due process. The record clearly indicates that George B. Collins was counsel for Hoffman and Hoffman's captive corporations, including Automatix, throughout these proceedings. It is just as clear that Hoffman, in his capacity of sole owner, was the *alter ego* of these captive corporations. The trial court entered an order on July 28, 1967, reciting that all parties, including Automatix, were before the court. In the extensive objections made by the attorney for Hoffman and Automatix to that order and to the findings upon which it was predicated, no objection was raised that Automatix was not subject to the court's jurisdiction. It also appears that Collins, as counsel for Automatix, prepared on its behalf a motion to strike a motion filed by the Rehabilitator to declare void an agency agreement between Progressive and Automatix. A copy of that motion was given counsel for the Director in open court, and, while the motion does not appear in the record originally filed in this court, appellee's motion to supplement the record by adding that motion and a related order was allowed by us without objection by Automatix. In its brief here appellee relied upon the filing of that motion as a general appearance subjecting

Automatix to the jurisdiction of the trial court, and in the reply brief filed by Automatix and Hoffman it was admitted that the motion had been filed. In its petition for rehearing, Automatix now contends the motion was never filed.

Except for the apparent inability of the trial court clerk to locate the original motion among the quite voluminous trial court pleadings in this and related cases, all indications point to its filing. All counsel, including Collins who prepared the motion, assumed it had been filed, and Automatix in its reply brief admitted the motion had been filed. No actual denial that this was the fact occurred prior to the petition for rehearing filed subsequent to adoption of our original opinion affirming the trial court judgment. Under these circumstances we believe appellant may not now question the fact of its filing. (See *Slezak* v. *Fleming,* 392 Ill. 387; *LeRoy State Bank* v. *Keenan's Bank,* 337 Ill. 173, 193; *People* v. *Boening,* 68 Ill. App. 2d 1, 13.) In actions of this nature there are often many "suits within a suit", usually initiated by a petition, without formal process, appearance, or order of default, where parties in the intervening petition are before the court fully represented by counsel. The contention that counsel for the Rehabilitator addressed himself primarily to Hoffman is readily understandable since Hoffman had already procured a check from Automatix for $227,469.15. In our opinion, Automatix was subject to the jurisdiction of the court.

Hoffman contends that he was entitled to a plenary trial before a jury on the issue of whether or not he was indebted to the Rehabilitator. He insists that failure to grant him such a trial was a violation of his constitutional rights. The Rehabilitator points out that the petition here involved was to recover trust funds belonging to Progressive. These funds were premiums received by Automatix for the account of Progressive. The statute (Ill. Rev. Stat. 1967, ch. 73, par. 1065.52) provides in part that all premiums collected "shall be held by the agent, broker or solicitor in

a fiduciary capacity and shall not be misappropriated or converted to his own use or illegally withheld by the agent, broker or solicitor." Insurance Department Rule 31.13 follows the statute in stating that these funds are held in a fiduciary capacity and are not to be commingled with any other funds or monies not of such fiduciary character. The primary complaint is that summary judgment was improper since the Insurance Code contains no provision establishing summary jurisdiction in insurance liquidation or rehabilitation proceedings.

In *People ex rel. Gerber* v. *Central Casualty Co.*, 37 Ill.2d 392, 398, it was pointed out that summary jurisdiction under the Insurance Code is similar to summary jurisdiction of a Federal bankruptcy court. The distinction between summary and plenary proceedings is drawn on whether property is acquired or held by others for the account of the bankrupt on the one hand, or whether assets are held adversely under a substantial claim. As was said in *Gerber:* "Federal courts in bankruptcy cases have defined claims as substantial, as opposed to insubstantial or 'colorable,' 'when the claimant's contention "discloses a contested matter of right, involving some fair doubt and reasonable room for controversy," * * * in matters either of fact or law; and is not to be held merely colorable unless the preliminary inquiry shows that it is so unsubstantial and obviously insufficient, either of fact or law, as to be plainly without color of merit, and a mere pretense.' (*Harrison* v. *Chamberlin* (1926), 271 U.S. 191, 195.) It is only colorable, insubstantial claims that may be summarily resolved, * * *."

Applying the foregoing to the situation with which we are faced, the questions are: Did the Rehabilitator have actual or constructive possession of the assets under the "take over" order and did Hoffman or Automatix have a substantial unresolved claim. The first is easily resolved. The Rehabilitator stood in the shoes of Progressive. He was entitled to and had constructive possession of all property held

by Progressive's fiduciaries in trust for it. The other question as to whether there was more than a colorable claim by Hoffman and Automatix hinges on the relationship between Hoffman on the one hand and Automatix and Progressive, his corporate creatures, on the other. Contrary to a prior order of the trial court, a check was drawn to Hoffman from Automatix for $227,469.15. This is supposed to have been repayment of a loan by Hoffman to Automatix of $230,000 of negotiable U.S. treasury bills.

Hoffman claims that the shortage which he covered with the bills was inherited from Progressive Agency, predecessor to Automatix, owned and controlled by Hoffman. The Rehabilitator asserts that Hoffman had siphoned off the funds through the withdrawal of a large portion of the missing funds by the check for $227,469.15, which check was drawn by him on Automatix, was made payable to himself and was endorsed by him and placed in his own bank account. The records of Progressive and Automatix disclose that as of May 31, 1967, there should have been $1,003,297.30 in the premium trust fund as net premiums for policies issued by Progressive. There was due Automatix from brokers or subagents for net premiums the sum of $742,923.43 and by crediting that amount against the total premiums due, the balance was $260,373.87. The cash remaining in the fund to cover that balance was $4,565.55, leaving a cash shortage in that fiduciary account of $255,808.32, the amount of the judgment. Under these facts, it is clear that neither Hoffman nor Automatix had a substantial unresolved claim to the contested funds, but that instead their alleged interest was a mere pretense and subject to summary action.

Defendant Hoffman contends that plaintiff did not meet his burden of proof in that he did not prove Hoffman owed $255,808.32 to Progressive. It is specifically urged that there was no proof of any personal benefit to Hoffman from any of the transactions, that he possessed any particular fund as a result of his transactions, that Progressive or Auto-

matix had conveyed any relevant amount of assets to him, or that he had acted fraudulently.

It is our opinion that plaintiff did prove that Hoffman had improperly withdrawn the amount of the check above referred to and, furthermore, in these circumstances, that the subsequent "turn over" order and judgment entered were proper. The record shows that defendant Hoffman owned, controlled and manipulated the affairs of Progressive, Automatix and other related corporate entities. Given the peculiar context of Hoffman's activities, as revealed by the record in this case, he cannot take refuge in his corporate structures and profess personal innocence. The chancellor, after extensive hearings in this cause, found that Hoffman dominated both Progressive and Automatix. In addition, he made careful and comprehensive findings of facts concerning the relationship of Progressive and Automatix, the nature of their respective businesses, the movement of funds between them, the shortage in the premium trust fund and the obligation of Automatix therefor. These findings show that there was a shortage in the premium trust fund account as of May 31, 1967, in the amount of $255,-808.32 which sum was not accounted for by balances due from subagents or brokers but represented an amount due to Progressive for policies issued by it. This shortage was discovered when plaintiff took over Progressive pursuant to order of court. Moreover, the record shows that less than four months prior to the take over, Hoffman had withdrawn from the premium trust fund account the sum of $227,469.15. This was contrary to an order of court issued only seven days prior thereto and was without leave of court. Under these circumstances, we are of the opinion that the findings of the chancellor are correct and they will not be disturbed. *Schmalzer* v. *Jamnik*, 407 Ill. 236.

Defendant Hoffman finally argues that the amount of the judgment was excessive. This amount represents the delinquency in the premium trust fund account held by

Automatix for Progressive. In arriving at the amount of net premiums due from Automatix to Progressive, the trial court took into consideration a commission figure to Automatix of 27.5%. No other figure was ever used in keeping the books and records of Progressive or Automatix or in preparing statements for the Department of Insurance, and the shortage in the premium trust account is that amount left over after credit to Automatix for all receivables due from agents and brokers. During the hearing before the trial court, Hoffman offered into evidence the agency agreement between Progressive and Automatix which provided for a 38.8% commission to the agency. However, by an addendum attached to and forming part of the agreement, this figure was reduced to either 25.7% or 27.5%. If, after the end of the third calendar year following the inception date of policies, the loss ratio of the company should be maintained at a certain percentile, an additional provisional commission was to be paid to aggregate 38.8%. Because of the insolvency of the company, this three-year point was never reached. Moreover, as the 38.8% is a contingent figure to be determined at a later date, amounts due as a result are separate and apart from the funds required by statute to be maintained in the premium trust account. If Progressive had remained in business and if the agency contract was valid, the claim for contingent commissions would be a claim against Progressive to be made separate and apart from the premium trust fund account. We feel that the judgment was not excessive.

For the above reasons, we are of the opinion that the "turn over" order and judgment are proper and they are accordingly affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.