EDGEWATER BEACH APARTMENTS CORPORATION, Plaintiff-Appellee, *v.* EDGEWATER BEACH MANAGEMENT CO., INC., *et al.*, Defendants-Appellants.

(Nos. 58261-58375;

First District (5th Division)—June 22, 1973.

*Rehearing denied July 23, 1973.*

Torshen, Cohen & Eiger, Ltd., of Chicago, (Jerome H. Torshen and Robert A. Skirnick, of counsel,) for appellants.

Springer & Casey, of Chicago, (Donald E. Casey, Gary E. Dienstag, and Barton J. Springer, of counsel,) for appellee.

Mr. PRESIDING JUSTICE DRUCKER delivered the opinion of the court:

Defendants bring this interlocutory appeal from an order granting plaintiff a preliminary injunction prohibiting defendants from using the word "Beach" in close connection with the word "Edgewater" in conjunction with the sale, rental or advertisement of apartments.

On appeal defendants contend that plaintiff was not entitled to preliminary relief (as was granted) under either the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1971, ch. 121½, par. 313) or the Illinois Trademark Act (Ill. Rev. Stat. 1971, ch. 140, par. 22) the latter of which has been referred to as the "Anti-Dilution Statute."

An evidentiary hearing was held prior to the issuance of the preliminary injunction wherein the following facts were elicited: Plaintiff is an Illinois corporation which has operated a cooperative apartment building called "Edgewater Beach Apartments" since 1949. The building is located at 5555 North Sheridan Road in Chicago. Defendants are developers of an apartment complex on property once occupied by the Edgewater Beach Hotel. The complex is located to the immediate south of plaintiff's building.

The Edgewater Beach Hotel was built in 1916. At the time it was 20 feet from Lake Michigan and had a private beach. Ownership of the hotel was transferred in 1950 and again in the 1960s when it was sold to the H. R. Weissberg Corporation (Weissberg). Weissberg operated the hotel until 1967 when it underwent reorganization in proceedings in the Federal District Court. The defendants purchased all the real estate owned by Weissberg prior to and during the reorganization proceedings. In addition they purchased from the trustee of Weissberg the following:

"* * * all the rights, title and interest * * * [held by the Trustee] in and to the good will relating to the operation of the Edgewater Beach Hotel including but not limited thereto, the use of the name "Edgewater Beach Hotel" and any and all trade names, * * *, either registered or unregistered, which have related to the operation of said Edgewater Beach Hotel."

While the Edgewater Beach Hotel was operating it was referred to as "The Edgewater Beach." It had both transient and permanent guests both of whom were entitled to use the hotel swimming pool, tennis courts and other related activities.

In 1928 the original owners of the hotel built a luxury type apartment building which is now owned by plaintiff. It was called "The Edgewater Beach Apartments." Occupancy was on a rental basis. Plaintiff corporation was formed in 1949 and has operated the "Edgewater Beach Apartments" since that time. The building contains 309 apartments. In order for one to lease an apartment he must be a shareholder in the cooperative which runs the building. Plaintiff advertises under the name "Edgewater Beach Apartments" in newspapers and printed brochures. There are commercial tenants who are not members of the cooperative who occupy stores on the ground floor. They use the name "Edgewater Beach

Apartments" in designating their trade or business. There is a staff of about 80 persons to maintain and operate the building. A prospective tenant (and thus a prospective shareholder in the cooperative) must fill out an application and credit information sheet and these are turned over to a screening committee for approval. If the prospective seller and buyer agree on a price and the committee approves the application, the old shares are transferred by the seller to the cooperative and new shares are issued to the buyer.

George Kemp, president of the realty firm which operates plaintiff's building, testified that the general public forms a "nomenclature" with respect to Chicago buildings; that plaintiff's building, like other prestigious buildings in the area, has come to be known by its name rather than its address; that the name "Edgewater Beach Apartments" has acquired distinctiveness in the real estate community of Chicago and nationally as well.

In 1971, after reorganization of Weissberg, defendants began the construction of an apartment complex immediately to the south of plaintiff (on the site of the old hotel). The first apartment building constructed was named "Edgewater Plaza." The second building was named "Edgewater Beach" or "5445 Edgewater Beach." The local media has referred to the complex as the "Edgewater Beach Apartments." All prospective tenants must fill out application forms and undergo a credit check in some instances before a lease is issued. Defendants plan the construction of more apartment buildings and commercial space. A hotel will not be constructed. The complex is bounded in part by a private street called "North Edgewater Beach Drive" which was constructed by defendants after the reorganization proceedings.

Little confusion existed between plaintiff's apartment building and defendants' complex until defendants' second apartment building called "Edgewater Beach" or "5445 Edgewater Beach" was built. Since that time plaintiff's witnesses stated that its building has been "flooded" with telephone calls and complaints properly directed to defendants' building. Prospective tenants of defendants are calling plaintiff's switchboard to rent apartments. Furniture movers have been confused as to the proper building to make deliveries. Newspaper articles relating to defendants' complex have referred to it as "The Edgewater Beach Apartments." No vacancies in plaintiff's building have occurred since the partial construction of defendants' complex, and over the years the share value of stock held by members of the cooperative has risen.

There was evidence submitted as to whether the name "Edgewater Beach" was descriptive of a geographical location. Defendant introduced into evidence two Rand-McNally maps (dated 1938 and 1947) both of

which had the words "Edgewater Beach" printed at the relevant location. A Chicago Transit Authority "L" stop was called "Berwyn-Edgewater Beach" until 1971 when the words "Edgewater Beach" were deleted therefrom. Two witnesses for plaintiff, both in the real estate business, testified that the community wherein the buildings involved are situated is called "Uptown," and the sub-community is called "Edgewater." There is no sub-community called "Edgewater Beach." There are only two beaches in the area, Foster Avenue Beach and Hollywood Beach. Between them (wherein the buildings lie) there is only "rock-piling."

Based on the foregoing facts the court made the following findings in granting preliminary relief to plaintiff:

"2. That Plaintiff's use of the words 'Edgewater Beach' in conjunction with the ownership and operation of cooperative apartments occupied by its shareholders under proprietary leases is prior in time to the use by Defendants of the words 'Edgewater Beach' in conjunction with the sale, rental, or advertisement for sale or rental of apartments located in buildings owned, operated or managed by them;   *   *   *.

3. That the use of the word 'Beach' by the Defendants in connection with its apartment development has created actual confusion as well as a likelihood of confusion between the buildings of Defendants and the building of Plaintiff and the corporate name of Plaintiff, and that there exists a likelihood of dilution of the distinctive quality of Plaintiff's name and that Plaintiff's name is distinctive and signifies the Plaintiff and its building.

4. That the words 'Edgewater Beach' are not geographically descriptive but rather that the properties of the Plaintiff and the Defendants are located in a community known as the Community of Uptown and within a Subcommunity of the Community of Uptown known as Edgewater and that such Community and Subcommunity have been so known for many years.

5. That unless Defendants are enjoined from using the word 'Beach' in close conjunction with or immediately following the word 'Edgewater' in the sale or rental of their apartments, Plaintiff will suffer irreparable harm.

6. That Plaintiff has established a fair probability that it will prevail at a trial on the merits, and that the status quo should be preserved until a final hearing on the merits.

7. That Defendants' use of the words 'Edgewater Beach' is with full knowledge of Plaintiff's prior use of these same words."

*Opinion*

Plaintiff seeks relief under both section 2 of the Uniform Deceptive

Trade Practices Act (Ill. Rev. Stat. 1971, ch. 121½, pars. 312, 313) and section 15 of the Trademark Act (Ill. Rev. Stat. 1971, ch. 140, par. 22). The court below granted preliminary relief based on both statutes, and our task as a reviewing court is to determine whether it abused its discretion in doing so. *People ex rel. Bolton v. Progressive General Insurance Co.*, 84 Ill.App.2d 109, 228 N.E.2d 146.

First we address the issues raised under the Uniform Deceptive Trade Practices Act. Section 2 thereof provides in relevant part:

> "A person engages in a deceptive trade practice when, in the course of his business, vocation or occupation, he: * * *
>
> (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;
>
> (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection or association with or certification by another;
>
> * * *
>
> (12) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.
>
> In order to prevail in an action under this Act, a complainant need not prove competition between the parties of actual confusion or misunderstanding."

Proof of monetary damage to plaintiff is unnecessary as is proof that defendant had the intent to deceive. Ill. Rev. Stat. 1971, ch. 121½, par. 313. ■■ Defendants raised two defenses to plaintiff's claim under the above statute in addition to contesting the issue that "likelihood of confusion or misunderstanding" is caused by its use of the name "Edgewater Beach" in connection with the rental of apartments. First, it contended that the term "Edgewater Beach" merely describes a geographic location and therefore is not entitled to trade name protection. The general rule as noted by defendant is that geographic names which designate a particular area or locality are regarded as common property and may not be exclusively appropriated as a trade name. (*Elgin Butter Co. v. Creamery Co.*, 155 Ill. 127, 40 N.E. 616; C.J.S. Trademarks, § 43, p. 274.) In the instant case there was conflicting evidence as to whether the term "Edgewater Beach" was descriptive of the locale surrounding the subject apartment buildings. It is unnecessary to repeat the testimony which was set forth earlier. Resolution of the issue was a matter of considering conflicting evidence and therefore one best determined by the trier of fact. Its decision was not against the manifest weight of the evidence. We think it relevant to note that the beach once near defendants' property has not been in existence for a lengthy period of time and that the

Edgewater Beach Hotel has now been defunct for about six years. The passage of time. may cause a name which was once geographically descriptive to no longer be so. (See Callman, Unfair Competition, § 72, p. 198 (3d ed.).) Having affirmed the trial court's conclusion that "Edgewater Beach" is not geographically descriptive, it is evident that plaintiff's trade name is an "arbitrary" one and deserving of protection. See *Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 611 (7th Cir. 1965).

In view of the position taken above it is unnecessary to discuss the propriety of the court's finding (number three) that the name "Edgewater Beach" has acquired distinction and has come to signify plaintiff's building, *i.e.*, that it has secondary meaning.[1]

The second defense interposed by defendants is that they acquired the right to use the name "Edgewater Beach" in connection with the rental of apartments through the purchase of such alleged right from the trustee appointed during the reorganization of the H. R. Weissberg Corporation (defendants' predecessor in title to the subject property).

■■■ The bill of sale from the trustee provides that the purchaser was to receive in relevant part:

> "* * * all of the rights, title and interest of the party of the first part, as Trustee, in and to the good will relating to the operation of the Edgewater Beach Hotel including, but not limited thereto, the use of the name 'Edgewater Beach Hotel' and any and all trade names, trade styles, either registered or unregistered, which have related to the operation of said Edgewater Beach Hotel."

On its face. the above document gives the defendants only the right to use the name "Edgewater Beach" in connection with any hotel or hotel related activities, which they do not claim to be doing, and not in connection with the operation of an apartment building. Moreover, the legality of the use of the trade name "Edgewater Beach" by defendants in connection with an apartment building seems questionable in light of the general rule that "any assignment of a trademark and its goodwill (with or without tangibles or intangibles assigned) requires the mark itself be used by the assignee on a product having substantially the same characteristics." *Pepsico, Inc. v. Grapette Co.*, 416 F.2d 285, 288 (8th Cir. 1969)—assignee of trademark "peppy" for a cola drink barred from

---

[1] A geographically descriptive name will nevertheless be given trade name protection if it has a secondary meaning. See *Elgin Nat'l Watch Co. v. Illinois Watch Co.*, 179 U.S. 665, 673-674; *Pan American Realty Corp. v. Forest Park Manor, Inc.*, 160 U.S.P.Q. 346, 349 (Sup. Ct. Mo. 1968).

using the mark on a "pepper" flavored soft drink. Therefore defendants' contention is without merit.

We now turn to the issue of whether there is sufficient evidence in the record to support the court's finding that there is a likelihood of confusion between plaintiff's and defendants' apartment buildings due to the use of the name "Edgewater Beach" by defendants. The likelihood of confusion could be either as to the source or sponsorship of the apartment buildings (Ill. Rev. Stat. 1971, ch. 121½, par. 312(2)) or as to affiliation, connection or association. Applied to the facts of this case the former suggests a likelihood of confusion in that a prospective "customer" of plaintiff's building will mistakenly be led to rent apartment space in defendants' building. The latter suggests a likelihood of confusion in that it will appear that the two buildings are affiliated or connected in some way and that plaintiff's reputation will thus no longer be in its own hands. See *Tisch Hotels, Inc.,* at 612, citing *Yale Electric Corp. v. Robertson,* 26 F.2d 972, 973 (2d Cir. 1928).

■ ■ Defendants argue that likehood of confusion as to source or sponsorship is highly unlikely where as here prospective purchasers of the "product" offered by each party will be highly discriminative (see Restatement of Torts, § 729(d); *Charles F. Ryan & Son, Inc. v. Lancaster Homes, Inc.,* 22 A.D. 186, 254 N.Y.S.2d 473), and plaintiff's building is operated as a cooperative whereas defendants' is run under the conventional rental method. Accepting this as true, it still does not answer the problem that plaintiff faces as to the likelihood of confusion from the public believing that the two buildings are in some way affiliated or connected. This is especially true here in that the trade names used are substantially the same, *i.e.,* plaintiff uses the name "Edgewater Beach Apartments" and defendant the name "Edgewater Beach" or "5445 Edgewater Beach" (although the building's actual address is 5445 North Sheridan Road), the parties in substance deal in the same commodity (apartments) despite their difference in financial structures, and the buildings are on contiguous pieces of land. The actual confusion that has occurred in misguided telephone calls and deliveries, prospective tenants of defendants' building calling on plaintiff, and among defendants' own tenants, corroborates the likelihood of confusion among the general public. We thus feel that there was sufficient evidence presented to justify the issuance of a preliminary injunction.

Since further proceedings appear likely in this matter, we deem it appropriate to briefly comment upon plaintiff's claim to relief under the Anti-Dilution Statute. (Ill. Rev. Stat. 1971, ch. 140, par. 22.) The court found that "there is likelihood of dilution of the distinctive quality of

plaintiff's name." [2] This language is taken directly from the statute.

■■ The Anti-Dilution Statute provides protection for a strong trade name or trademark from deleterious effects of the use of a similar name or mark by another person when said person is not in competition with the holder and no likelihood of confusion will result from its usage. (See *Polaroid Corp. v. Polaraid, Inc.*, 319 F.2d 830 (7th Cir. 1963).) Where traditional remedies under theories of unfair competition are available, relief under the statute should not be granted. (See *Capitol Tie Rak, Inc. v. Tie Rack Stores of Illinois*, 150 U.S.P.Q. 357, 360-361 (N.D. Ill. 1966); Derenberg, The Problem of Trademark Dilution and the Anti-Dilution Statutes, 44 Cal. L. Rev. 439, 448-463 (1956); Callman, Unfair Competition, § 84.2, pp. 953-958 (3d ed.).) In the instant case not only are the parties competitors with one another but there is, as we have held, a likelihood of confusion between them. Therefore, the Anti-Dilution Statute is inapplicable to the case.

The decision of the circuit court is affirmed.

Affirmed.

ENGLISH and SULLIVAN, JJ., concur.

---

[2] The section provides in relevant part:

"Every person, * * * adopting and using a * * * trade name, * * * may proceed by suit, and all courts having jurisdiction thereof shall grant injunctions, to enjoin subsequent use by another of the same or any similar * * *, trade name, * * * if there exists a likelihood of injury to business reputation or 'of dilution of the distinctive quality of the * * *, trade name, * * *, notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services; * * *."