NORTHWEST SUBURBAN CONGREGATION BETH JUDEA, INC.,
Plaintiff-Appellee, *v.* MORDECAI M. ROSEN *et al.*, Defendants-Appellants.

Second District    No. 81-734

Opinion filed February 25, 1982.—Rehearing denied March 25, 1982.

Philip S. Aimen and Roger F. Maritote, both of Chicago, for appellants.

Morton Denlow, of Sachnoff, Weaver & Rubenstein, of Chicago, for appellee.

JUSTICE HOPF delivered the opinion of the court:

Defendants appeal the issuance of a temporary restraining order and preliminary injunction by the Lake County circuit court restraining them from using the name Congregation Beth Judea.

Plaintiff Northwest Suburban Congregation Beth Judea, Inc., was formerly incorporated under the name Congregation Beth Judea, Inc. The congregation was formed in 1968 to serve the Jewish community in the northwest suburbs of the Chicago metropolitan area. The congregation was incorporated under the name Congregation Beth Judea, Inc., on December 17, 1968.

In May 1981 the corporation was involuntarily dissolved for its failure to timely file an annual report with the Secretary of State. It continued to use its original name, however.

Earlier, in March 1981 defendant Mordecai Rosen, who had been the rabbi for plaintiff since 1969, organized a new congregation, Congregation Mishpaha (Our Family), with some members of the old congregation, including defendants Max and Adeline Feldman. Most of the area served by this new organization includes the community served by plaintiff.

In July 1981, having learned that plaintiff corporation had been involuntarily dissolved, Congregation Mishpaha sought incorporation under the name Congregation Beth Judea, Inc. It was incorporated under this name on July 10, 1981.

Plaintiff, still using the name Congregation Beth Judea, sought reinstatement as a corporation. Because defendants had incorporated under the name Congregation Beth Judea, Inc., plaintiff congregation was reinstated as a corporation under the name Northwest Suburban Congregation Beth Judea on August 21, 1981. Plaintiff continued to use the name Congregation Beth Judea. It was listed under this name in the listing of area houses of worship in a local newspaper. It advertised for new members in local newspapers under this name.

On Saturday, August 29, 1981, there appeared in a local newspaper an advertisement regarding High Holy Day services on behalf of defendant Congregation Beth Judea and indicating the rabbi as defendant Mordecai Rosen. Monday, August 31, 1981, plaintiff filed a verified complaint for permanent injunction, preliminary injunction, and temporary restraining order to restrain defendants from using the name Congregation Beth Judea. On the same date plaintiff also filed a motion for a temporary restraining order (TRO) and preliminary restraining order. Notice was given by telephone to defendants' attorney at 12:05 p.m. At 4:03 p.m. the court granted the temporary restraining order. On September 16, 1981, following an extensive hearing, the court also granted a preliminary injunction and defendants appealed.

The issues on appeal are as follows:

1. Whether the trial court abused its discretion in granting a temporary restraining order without notice and hearing to the defendants.

2. Whether a dissolved corporation which is subsequently reinstated under a changed name can maintain an action to enjoin the defendants from using its former name.

3. Whether the plaintiff could maintain this action under the corporate survival provision of the General Not for Profit Corporation Act. Ill. Rev. Stat. 1979, ch. 32, par. 163a *et seq.*

4. Whether the trial court should have dismissed the individual defendants on their motion for a directed verdict and/or at the close of the hearing.

5. Whether the order granting the preliminary injunction was against the manifest weight of the evidence.

■■ With regard to the first issue defendants argue that the TRO was issued without notice and that therefore the provisions in section 3—1 of the Injunction Act (Ill. Rev. Stat. 1979, ch. 69, par. 3—1) pertaining to TROs issued without notice should be applied. That section provides that a TRO granted without notice "shall define the injury and shall state why it is irreparable and why the order was granted without notice." The order, however, states that notice was given at 12:05 p.m. by telephone to defendants' attorney. This was 3 hours 58 minutes before the TRO was granted. Informal notice has been recognized as sufficient notice. (*Bettendorf-Stanford Bakery Equipment Co. v. UAW* (1977), 49 Ill. App. 3d 20, 363 N.E.2d 867; *Sangamo Electric Co. v. UAW* (1976), 42 Ill. App. 3d 563, 356 N.E.2d 389.) The cited cases involved situations where no notice was given and the courts pointed out that " 'a telephone call can produce an appearance within minutes. Some notice, however informal, is greatly to be preferred to none at all.' " *Bettendorf-Stanford Bakery Equipment Co. v. UAW* (1977), 49 Ill. App. 3d 20, 24.

Defendants argue, however, that plaintiff knew weeks before it sought the TRO it would seek to stop defendants from using the name. It is true, as defendants assert, that a few weeks earlier plaintiff had resolved to seek a way to recover its former name. The verified complaint of Monday morning, August 31, clearly shows, however, that what determined the need for injunctive relief was defendant's Saturday, August 29, advertisement. Plaintiff had not procrastinated. The Monday motion for TRO was made in quick response to the advertisement from which it perceived a need for immediate relief. Given that it perceived the advertisement to mislead people and harm its congregation plaintiff sought a TRO quickly and under these circumstances the telephone notice was permissible. Therefore, defendant is incorrect in stating that the TRO

order was issued without notice. Defendant had over three hours to appear before the court to contest the matter.

■■ The next two issues defendants raise concern the provisions in the General Not For Profit Corporation Act (Ill. Rev. Stat. 1979, ch. 32, par. 163a *et seq.*) regarding incorporation and corporate names. Defendants argue that the Act clearly recognizes that a corporation may take as its name any name not in use at the time by any other corporation, and that a dissolved corporation seeking reinstatement must take a new name if another corporation has incorporated under the old name. This is true, and needs no discussion. The question of the correctness of enjoining defendants' use of the corporate name cannot be answered merely with a resort to the statutes, however.

■■ At common law it has long been recognized that a party may be enjoined from using a name under which it is incorporated if the name creates confusion and deceives the public. The rule was stated in *Bender v. Bender Store & Office Supply Fixture Co.* (1913), 178 Ill. App. 203, 207:

> "It is true, persons seeking to form a corporation may ordinarily choose any name their fancy dictates, subject, however, to the rule that they may not choose the name of a corporation already existing, or one that is to be used to deceive the public, or to be passed off for that of some other person or firm in business. [Citations.] When a corporation violates that rule, it does so at its peril. Neither does the fact that the state issues a charter to a corporation by a certain name give to such corporation a right to use it, if it was deliberately chosen, or is used for the purpose of deceiving the public and thereby appropriating the business of another. [Citations.] When such unfair name is selected by a corporation for the purpose of deceiving the public into the belief that its goods are the goods of another, the use of that name for that means will be enjoined."

The court in *Bender* developed the rule further, stating, "We think the rule goes even further in that when the use of the name *results* in the palming off of one's goods on the public as the goods of another, the use of such name will be enjoined." (178 Ill. App. 203, 207.) Thus, the intention of the party using the other's name has no bearing on the issue.

In *Lady Esther, Ltd. v. Lady Esther Corset Shoppe* (1943), 317 Ill. App. 451, 459, 46 N.E.2d 165, it was held that injunctive relief would be granted even when the parties do not compete where "the public might be deceived into thinking there was some connection between the defendant and the plaintiff companies. And the good-will of plaintiff, which it had built up at great expense over a period of years, would be whittled away. Courts of equity ought not to be so feeble as to be unable

to prevent this." The court added that the fact defendant was incorporated under the name Lady Esther Corset Shoppe did not protect it from injunction.

*Baldassano v. Accettura* (1949), 336 Ill. App. 445, 447, 84 N.E.2d 336, stated that equity will give relief "where another has used the former's name or a name so clearly similar as to almost necessarily lead to complication and confusion in the business of the parties. * * * The trend is to place * * * emphasis on confusion of the public. * * * [P]roof of actual confusion is not essential."

In *Edgewater Beach Apartments v. Edgewater Beach Management* (1973), 12 Ill. App. 3d 526, 299 N.E.2d 548, the reviewing court relied on the likelihood of confusion, not on statutory authority, to affirm a preliminary injunction of defendant's use of the name of Edgewater Beach. A prospective tenant may mistake defendant corporation for plaintiff or at least support an affiliation or connection between the two, "and plaintiff's reputation will thus no longer be in its own hands." 12 Ill. App. 3d 526, 533.

It has been recognized that the rule applies to non-profit organizations, not just commercial establishments. (*Pilgrim Holiness Church v. First Pilgrim Holiness Church* (1969), 115 Ill. App. 2d 448, 252 N.E.2d 1.) For this proposition *Pilgrim* cited *American Gold Star Mothers, Inc. v. National Gold Star Mothers, Inc.* (D.C. Cir. 1951), 191 F.2d 488, 489, which stated:

> "Source, reputation and good will are as important to eleemosynary institutions as they are to business organizations. 'Anything which tends to divert membership or gifts of members from them injures them with respect to their financial condition in the same way that a business corporation is injured by diversion of trade or custom.' 'Distinct identity is just as important to such an organization, oftentimes, as it is to a commercial company. Its financial credit—its ability to raise funds, its general reputation, the reputation of those managing and supporting it, are all at stake if its name is used by some other organization and the two become confused in the minds of the public.' "

In the case at bar the name in issue is not plaintiff's present name but one under which it was formerly incorporated. *Pilgrim Holiness Church v. First Pilgrim Holiness Church* concerned a defendant's use of a name that plaintiffs had "abandoned." The appellate court held that defendant could not be restrained from using that name. *Pilgrim* differs from the case at bar in that the plaintiff church there merged with the Wesleyan church and after such merger plaintiff "ceased to exist as a viable entity," and had no longer an "independent existence." (115 Ill. App. 2d 448, 459.)

This led the court to conclude there was "no possibility that the corporate names will tend to confuse the public or mislead them in any way," and so there was "no reason for protection." (115 Ill. App. 2d 448, 459.) Here, though, the old organization did not cease to exist as a viable entity; it still has independent existence. Further, it still presents itself to the public as Congregation Beth Judea. All the undesirable results that justify injunctive relief in the previously cited cases are likely to occur here. "[T]he public might be deceived * * * [a]nd the good-will of plaintiff, which it had built up at great expense over a period of years [may] be whittled away." (*Lady Esther, Ltd., v. Lady Esther Corset Shoppe* (1943), 317 Ill. App. 451, 459.) "Complication and confusion in the [parties'] business" is likely (*Baldassano v. Accettura* (1949), 336 Ill. App. 445, 447), defendant may be mistaken for plaintiff, and plaintiff's reputation may no longer be in its own hands. (*Edgewater Beach Apartments v. Edgewater Beach Management* (1973), 12 Ill. App. 3d 526, 533.) As in the above cited cases equity supersedes strict application of the statute here.

Defendant argues, however, that the trial court's findings about the identification of the name with plaintiff congregation is against the manifest weight of the evidence.

The standard of review of the issuance of a preliminary injunction is as follows:

> "The issuance of a preliminary injunction is within the sound discretion of the trial court upon a *prima facie* demonstration of necessity and a court of review will not set aside the injunction order unless there is a manifest abuse of discretion or an error of law." *K. F. K. Corp. v. American Continental Homes, Inc.* (1975), 31 Ill. App. 3d 1017, 1020, 335 N.E.2d 156.

■■ We had concluded above that as a matter of law a likelihood of confusion would justify restraining a congregation from using the name another congregation had formerly held as its corporate name. Therefore, the trial court did not make an error of law.

We conclude further that the court did not abuse its discretion in making its findings. The findings of the trial court indicate that confusion is indeed likely, if not certain, given that the new congregation carries plaintiff's old name and employs the rabbi formerly employed by plaintiff for 12 years. This is a quite obvious occasion for confusing the public. The evidence supports these findings. There was no abuse of discretion in ordering the preliminary injunction.

Defendants argue that the individual defendants should have been dismissed as they should not have been liable for the acts of defendant corporation either as incorporators or as directors.

■■ Plaintiff argues, however, that defendants "made no efforts to select officers or otherwise undertake the operation of the entity as a corpora-

tion." Two of the three directors admitted at the preliminary hearing there had never been a meeting of the board of directors and no officers had been elected.

It is apparent that the defendant corporation has not yet begun to operate as a corporation. A "corporate veil" may be pierced when the persons directing it do not comply with corporate formalities. (*Macaluso v. Jenkins* (1981), 95 Ill. App. 3d 461, 420 N.E.2d 251.) This is the case here; therefore, the injunction could properly be issued against the individual defendants.

Affirmed.

LINDBERG and NASH, JJ., concur.