JOHN P. GRIMES, Plaintiff-Appellee and Cross-Appellant, *v.* THOMAS M. ADLESPERGER *et al.*, Defendants-Appellants and Cross-Appellees.

Fourth District   No. 14991

Opinion filed December 29, 1978.

---

[3] Justice Brown participated in this decision while assigned to the Illinois Appellate Court, First District.

Roger D. Lapan, of Bloomington, for appellant.

George L. Chesley and J. Michael Grosso, both of DePew, Grimes & Chesley, of Bloomington, for appellees.

Mr. JUSTICE MILLS delivered the opinion of the court:
Realtor multiple listing.
Contract to sell real estate.
Listing information erroneous.
Contract rescinded.
We affirm.

The Adlespergers listed their "Double B Barn" restaurant in Anchor, Illinois, with Ebach Realty which was a member of a multiple listing service. After John T. Grimes saw the business listed in a multiple listing service book at Hundman Realty, Gary Fite, a Hundman sales representative, showed him the restaurant. Later, Grimes went to Fite's home and signed an offer to purchase the restaurant for $85,000. He based his offer on the figures in the real estate multiple-listing book which gave the gross income as $240,000. Although the book stated the gross income was $240,000, it was subsequently discovered that the tax returns for 1976 and 1975 entered the gross receipts as $153,681.08 and $158,496.13, respectively.

Seven days later, Grimes signed a contract for the purchase of the restaurant and advanced $17,000 toward the purchase price. But on the scheduled closing date, Grimes declined to complete the transaction. He filed suit for return of his down payment claiming that he was misled by the Adlespergers. The Adlespergers then counterclaimed for specific performance. After the trial court found for Grimes, the Adlespergers appealed and Grimes cross-appealed.

On appeal, the Adlespergers claim the trial court's finding that they were guilty of misrepresentation (which allowed Grimes to rescind the contract and recover his down payment) was against the manifest weight of the evidence. In opposition, Grimes asserts there were several grounds for rescission of the contract. However, we find it only necessary on appeal to consider the allegedly erroneous gross income figure in the multiple listing book.

■■ Section 2 of the Consumer Fraud and Deceptive Business Practices Act reads in pertinent part as follows:

"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of any material fact, * * * are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." (Ill. Rev. Stat. 1977, ch. 121½, par. 262.)

In *American Buyers Club v. Honecker* (1977), 46 Ill. App. 3d 252, 361 N.E.2d 1370, the court stated that the seller's *intention*, or his good or bad faith, was not important, but rather that the *effect* that such conduct might have *on* the *consumer* was the center of focus.

■■ Section 262 expressly provides that section 5(a) of the Federal Trade Commission Act (15 U.S.C. §45 (1976)) should be considered in construing the statute. It has been held under the Federal act that a trader's representation may be unlawful even though made innocently. (*L. & C. Mayers Co. v. Federal Trade Com.* (2d Cir. 1938), 97 F.2d 365.) Likewise, an innocent motive is not a defense if an advertisement is prejudicial to the public interest because good faith is generally irrelevant to the need for corrective advertising. *Warner-Lambert Co. v. Federal Trade Com.* (D.C. Cir. 1977), 562 F.2d 749, *cert. denied* (1978), 435 U.S. 950, 55 L. Ed. 2d 800, 98 S. Ct. 1575-76.

■■■ In this case, Thomas Adlesperger furnished Ebach Realty with the information to be put into the multiple-listing-service book. Although Adlesperger testified that he believed gross receipts and gross income were not synonymous, he gave no reasonable explanation for the great discrepancy between the gross receipts for the tax returns of $153,681.08 and $158,496.13 and the gross income for the book of $240,000. The defendants maintain that listing the gross income as $240,000 was not grounds for rescission of the contract since Grimes did nothing to verify the figure. However, the statute declares the *misrepresentation* unlawful and does not place a burden upon the plaintiff to check out the validity of the figure.

Our holding that the trial court correctly rescinded the contract also determines that the court properly denied the Adlespergers' counterclaim for specific performance. However, even assuming the court's rescission of the contract was erroneous, the inaccuracy of the gross-income figure would still bar the defendant's specific performance.

■■ A contract will not be specifically enforced where material misrepresentations successfully induce another to purchase property, it

being immaterial whether the statements are made innocently or with an intent to deceive. (*Handelman v. Arquilla* (1950), 407 Ill. 552, 95 N.E.2d 910; *Vasco Trucking, Inc. v. Parkhill Truck Co.* (1972), 6 Ill. App. 3d 572, 286 N.E.2d 383.) Here, the gross-income figure was listed as $240,000, although it was in actuality substantially less than that. Grimes relied upon that figure in making his offer and, thus, the contract should not be specifically enforced.

■■ Finally, Grimes counterclaims that the trial court erred in refusing to award him attorney's fees. Section 10a of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1977, ch. 121½, par. 270a), authorizes the court to award the injured party any relief it deems proper. In addition, a court may award reasonable attorney's fees and costs to the prevailing party, but the fees are purely discretionary under the act. Here, the defendants had reasonable grounds to believe they had a valid position since the plaintiff had signed both the offer and the contract and had given them a $17,000 down payment, while the evidence supports the posture that they were not guilty of any concerted or intentional effort to deceive the plaintiff. Therefore, the trial court did not abuse its discretion in denying Grimes any attorney's fees.

Judgment affirmed.

TRAPP and GREEN, JJ., concur.