WILLIAM J. SCOTT, Attorney General, Plaintiff-Appellant, *v.* ASSOCIATION FOR CHILDBIRTH AT HOME, INTERNATIONAL, *et al.*, Defendants-Appellees.

Fourth District   No. 16263

Opinion filed June 20, 1980.

William J. Scott, Attorney General, of Chicago, *pro se* (Joseph D. Keenan, III, Assistant Attorney General, of counsel), for appellants.

Leahy and Leahy, of Springfield (Mary Lee Leahy and Andrew J. Leahy, of counsel), for appellees.

Mr. JUSTICE GREEN delivered the opinion of the court:

On October 25, 1978, William J. Scott, Attorney General of Illinois, brought separate suits in the circuit court of Sangamon County, Illinois, against defendants, Association for Childbirth at Home, International (Association), and Cathryn S. Feral, seeking relief pursuant to section 6 of the Consumer Fraud and Deceptive Practices Act (Ill. Rev. Stat. 1979, ch. 121½, par. 266; hereafter referred to as the Act). The cases were later consolidated. Plaintiff appeals the March 24, 1980, order of the court dismissing the complaints in bar of action upon defendants' motion.

The procedural matters involved arise from sections 3, 4, 5, and 6 of the Act (Ill. Rev. Stat. 1979, ch. 121½, pars. 263, 264, 265, and 266). Their consideration in some detail is necessary to an understanding of the case.

Section 3 gives certain powers to the Attorney General when (1) it appears to him that "a person has engaged in, is engaging in, or is about to engage in any practice" unlawful under the Act; (2) he receives a written complaint from a consumer or borrower of such a violation; (3) he believes it to be in the public interest to determine if any of the foregoing situations exist. The granted powers enable the Attorney General to (a) require the person suspected to file a written report, which the Attorney General may require to be verified, giving all information the Attorney General may deem necessary; (b) "[e]xamine under oath any person in connection with the conduct of any trade or commerce; (c) [e]xamine any

merchandise or sample thereof, record, book, document, account or paper as he may consider necessary"; and (d) pursuant to court order, impound certain items produced until completion of the proceedings in which the items are involved.

Section 4 authorizes the Attorney General to hold hearings "in aid of any investigation or inquiry" pursuant to the purpose of the Act, issuing subpoenas and conducting hearings. The section also authorizes him to make rules and regulations concerning the same, which shall have the force of law.

Section 5 provides for the manner of serving subpoenas and notices requiring filing of statements.

Section 6, upon which these proceedings were brought, provides the Attorney General with judicial relief against one who disobeys a subpoena or fails to file a required report. It permits the Attorney General to obtain (a) injunctive relief prohibiting the sale or advertisement of merchandise or the conduct of the trade or commerce involved, (b) vacation, annulment or suspension of the authority of persons in disobedience to do business, and (c) other judicial relief as may be required, all pending compliance by the person involved.

Together, the complaints alleged (1) the Association was and had been "engaged in the trade and commerce of advertising, educating and training parents in the area of childbirth and training teachers in the area of childbirth education, specifically oriented toward childbirth at home," (2) Feral was the "Midwest Regional Coordinator" for the Association, (3) the Attorney General believed it to be in the public interest to determine if the Association had or was about to violate the Act, (4) a notice to file and produce certain items had issued and been served on the Association through Feral and upon Feral individually and they had failed to timely comply, (5) the Association had also been subpoenaed to appear for examination at plaintiff's office on a day certain and had failed to comply. The complaint requested that defendants be ordered to comply and pending compliance to be enjoined from selling or advertising any merchandise in the State of Illinois and from conducting trade or commerce in the State. Various documents were attached to the complaint including copies of the subpoena and the requirements to file.

The motions to dismiss contended (1) the applicable provisions of the Act, both on their face and as applied, violated various provisions of the United States Constitution and the Illinois Constitution of 1970, (2) the complaints set forth no facts indicating (a) the existence of any of the grounds upon which the grant of power to the Attorney General under section 3 is based, or (b) probable cause that any person had engaged in, was engaging in or was about to engage in prohibited practices, and (3) the complaint set forth no "subject matter for investigation by which to

determine the relevancy and materiality of the materials requested." Although not stated in the motion to dismiss, other issues, to be discussed later, were raised by defendants at the hearing on the motion. Plaintiff does not dispute that we may consider those points.

The trial court supplemented its order of dismissal with a comprehensive memorandum of opinion. It concluded that section 4 authorizing the Attorney General to "issue subpoenas" and section 3(a) authorizing him to "[r]equire that person to file * * * a statement or report," requires the subpoena and filing request to be personally signed by the Attorney General rather than by an Assistant as was done here. As the validity of these documents was basic to the Attorney General's right to proceed here, the court deemed the complaint together with attachments to show that no cause of action existed. The court deemed it unnecessary or premature for it to pass upon other issues.

Plaintiff maintains on appeal that the circuit court was incorrect in requiring the personal signature of the Attorney General for the valid issuance of the subpoena and filing requests. In addition to asserting that the circuit court was correct in its holding, defendants also contend that the circuit court judgment is supportable because plaintiff's pleading shows that (1) the Act does not apply to defendants, (2) the Act is void for vagueness both on its face and as applied to defendants, and (3) the subpoena which the complaint seeks to enforce is so overbroad and general that it constitutes an unreasonable search and seizure under both the State and Federal constitutions.

Both sections 3(a) and 4 speak in terms of the Attorney General having power to "require that person to file * * * a statement or report" and to "issue subpoenas," respectively, without any statement that he may do so by assistant. On the other hand, legislation authorizing investigative hearings to be conducted by the Attorney General in matters involving charities specifically states that such a hearing may be held before the Attorney General or a specifically designated assistant (Ill. Rev. Stat. 1979, ch. 23, par. 5110). Similarly, legislation authorizing investigations by the Director of Insurance specifically states that hearings connected therewith may be conducted by the director "or other officer designated by him" (Ill. Rev. Stat. 1979, ch. 73, par. 1015). The circuit court concluded that the failure of the legislature to give specific authority to the officer involved to delegate authority under the Act while having done so in other similar legislation, indicated an intention that the writs here were required to be issued only by the Attorney General personally. Defendants urge that the circuit court's interpretation is particularly appropriate because the Act creates broad investigative powers which could be used oppressively. They note that here a membership list was

requested, a governmental demand that was held to be an infringement of first amendment rights under the circumstances involved in *NAACP v. Alabama* (1958), 357 U.S. 449, 2 L. Ed. 2d 1488, 78 S. Ct. 1163.

■■ Although we share defendants' concern with the scope of investigative power given by the Act, we do not agree that the legislature intended that the writs in question must be signed by the Attorney General personally. In *People v. Nahas* (1973), 9 Ill. App. 3d 570, 292 N.E.2d 466, the court examined legislation prohibiting eavesdropping unless done with permission of a party to the conversation and at the request of *"a State's Attorney"* (emphasis added) (Ill. Rev. Stat. 1969, ch. 38, par. 14—2(a)). The court concluded that an Assistant State's Attorney was intended to have the full powers of a State's Attorney when the State's Attorney was absent, sick or otherwise occupied. Even more reasons exist to imply that an Assistant Attorney General has implied power to act on behalf of the Attorney General.

In 1925 the supreme court ruled upon the question of whether the Attorney General had power to appoint assistants to enforce provisions of legislation concerning searches and seizures, although no legislative provision was made for his appointing Assistant Attorneys General except in relation to matters concerning inheritance taxes. In holding the implied power existed, the court stated:

"It is, of course, easily seen that in a great State such as this the multiplicity of duties of the Attorney General forbid personal attention to all of them. He must, and does, have power to appoint the necessary deputies or assistants to aid in carrying out those duties." (*Saxby v. Sonnemann* (1925), 318 Ill. 600, 607, 149 N.E. 526, 529.)

We need but look to the State statute books to conclude that the duties of the Attorney General are more numerous and complicated than in 1925. Even considering only the investigatory powers that we have referred to, it is obvious that he could not give personal attention to each writ. We can only conclude that the legislature intended that assistants act on behalf of the Attorney General in the issuance of the process in question.

A strong argument in support of implying the authority of an assistant to issue administrative subpoenas on behalf of his administration is contained in 1 Davis, Administrative Law Treatise §9.04 (1958). The author there points out that if the administrator is required to personally sign the process, he is almost certain to do it in a perfunctory manner.

■■ As the ruling on the motions to dismiss was entirely one of law, we can sustain the trial court's ruling on any legal ground justified by the record even though we do not agree with the reason cited by that court for its ruling. (*W. F. Smith & Co. v. Lowenstein* (1972), 4 Ill. App. 3d

N.E.2d 567.) Accordingly, we examine the other theories which defendants assert in support of the judgment.

■■ In *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634, an unsuccessful applicant to the defendant medical school brought suit against it alleging that it had inaccurately stated the criteria used to evaluate his application and thus (1) violated the Act, and (2) breached a contract entered into when it accepted his application fee. The supreme court held that no cause of action was stated under the Act because the applicant was not a "consumer" within the meaning of section 1(e) of the Act (Ill. Rev. Stat. 1973, ch. 121½, par. 261(e)), which defined a "consumer" as one who "purchases or contracts for the purchase of merchandise." Defendants maintain that *Steinberg* holds that the Act is not applicable to an entity engaged in teaching or education. The *Steinberg* opinion seems to be based upon the applicant's status rather than the nature of the defendant's business. In any event, the complaint here alleged that defendants were engaged in "trade and commerce." We do not find the complaint to show on its face that the Act was inapplicable to defendants.

Defendants' claim that the Act is unreasonably vague centers upon section 2 which states:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." (Ill. Rev. Stat. 1979, ch. 121½, par. 262.)

Defendants express concern as to the definitions of "unfair methods of competition," "unfair or deceptive acts or practices," "deception," "fraud," "false pretense," "false promise," "misrepresentation or concealment," "suppression or omission of any material fact," and other terms whose specificity are so obviously sufficient that we need not mention them here.

Defendants further maintain that in judging specificity of the Act we must hold it to a strict standard because the complaint shows that (1) it is being applied to the exercise of first amendment rights, (2) it is being

applied to activities involving the exercise of fourteenth amendment rights concerning the family and the birth of children, and (3) it is penal in nature. We do not need to decide whether the statute is penal in nature or whether the exercise of separate fourteenth amendment rights are involved, because by the precedent of *Bigelow v. Virginia* (1975), 421 U.S. 809, 44 L. Ed. 2d 600, 95 S. Ct. 2222, we are convinced that the complaint shows on its face that defendants are engaged in activities involving an exercise of rights protected by the first amendment. There, in a State where abortions were illegal, a statute also prohibited the sale or circulation of publications encouraging the procurement of an abortion. A newspaper editor was convicted for publishing an advertisement offering abortion services in a State where abortions were legal. In overturning the conviction, the court reasoned that the publication was an exercise of first amendment rights beyond those limited rights incident to merely commercial speech. The commercial aspects of the advertisement did not negate the editor's right to disseminate the information and ideas contained in the advertisement which concerned activity legal in the State where it would be performed. Here, the defendants are alleged to be disseminating information, albeit also in a commercial manner, about a method of bearing children. The publication of such information is entitled to as much protection as information on abortion. Numerous cases have held that prohibitions against conduct clothed with enumerated constitutional rights must meet a strict standard of specificity. (*Colautti v. Franklin* (1979), 439 U.S. 379, 58 L. Ed. 2d 596, 99 S. Ct. 675; *Smith v. Goguen* (1974), 415 U.S. 566, 39 L. Ed. 2d 605, 94 S. Ct. 1242; *Papachristou v. City of Jacksonville* (1972), 405 U.S. 156, 31 L. Ed. 2d 110, 92 S. Ct. 839.) Under *Bigelow*, the allegations that defendants were "advertising, educating, and training parents in the area of childbirth education" would place them under this umbrella.

The least specific word involved in section 2 is "unfair" as used in the phrases "unfair methods of competition" and "unfair or deceptive acts or practices." Plaintiff argues that the apparent vagueness of the word is cured because of the provision in section 2 that it is to be construed in the light of "the interpretations of the Federal Trade Commission and the federal courts relating to section 5(a) of the Federal Trade Commission Act." In 1931, well prior to the enactment of section 2, the United States Supreme Court stated that the phrase "unfair" as used in section 5(a) of the Federal Trade Commission Act (15 U.S.C. §45) could not be precisely defined but must be gradually determined by judicial decision. *Federal Trade Com. v. Raladam Co.* (1931), 283 U.S. 643, 75 L. Ed. 1324, 51 S. Ct. 587.

The Supreme Court of the State of Washington was called upon to pass on whether legislation similar to section 2 and containing the word 153, 280 N.E.2d 547; *Conte v. Horcher* (1977), 50 Ill. App. 3d 151, 365

"unfair" met constitutional muster as to specificity in holding that sweepstakes conducted by a magazine publisher violated the statute. It stated:

> "The language of the amended federal act, from which RCW. 19.86.020 [the Washington Statute under challenge] is taken, has been with us since 1938. The federal courts have amassed an abundance of law giving shape and definition to the words and phrases challenged by respondent. Now, more than 30 years after the Supreme Court said that the phrase 'unfair methods of competition' does not admit to 'precise definition,' we can say that phrase, and the amended language has a meaning well-settled in federal trade regulation law. * * * [I]n interpreting the language of RCW. 19.86.020 we must hold that the phrases 'unfair methods of competition' and 'unfair or deceptive acts or practices' have a sufficiently well established meaning in common law and federal trade law, by which we are guided, to meet any constitutional challenge of vagueness." (*State of Washington v. Readers Digest Association, Inc.* (1972), 81 Wash. 2d 259, 274-75, 501 P.2d 290, 301.)

The Washington court stated, however, that a regulation of noncommercial, constitutionally protected rights was not involved there. A similar decision concerning the sufficiency of prohibitions against unfairness was rendered in *Department of Legal Affairs v. Rogers* (Fla. 1976), 329 So. 2d 257.

■ We agree with plaintiff that the reference of section 2 to the Federal legislation promotes its clarity. We have no dispute with rulings of other States that, as so referenced, the word "unfair" is sufficiently definite and certain to meet ordinary charges of vagueness. We cannot agree that the reference is sufficient to enable the word to meet the strict specificity standard required here. No cases or series of cases are cited to us which, in any way, purport to define the boundaries of unfairness. It is a much more vague term than "deceptive," "fraud," "false," "misrepresentation," "concealment," "suppression," or "omission." It is noteworthy that conduct characterized by the latter words usually involves a *mens re* upon the part of the actor, while no wrongful intent or knowledge by the actor is necessary for conduct to produce a result which can be deemed to be "unfair." In *Colautti*, the court ruled legislation subjecting physicians to criminal liability for performing abortions upon viable fetuses under certain circumstances to be void for vagueness. The court noted that the lack of a definite *mens re* requirement in a prohibitory statute compounds its problems of clarity. (See also *Screws v. United States* (1945), 325 U.S. 91, 89 L. Ed. 1495, 65 S. Ct. 1031 (plurality opinion).) We thus find the portions of section 2 prohibiting acts of unfairness to be void

when applied to persons engaged in the activities attributed to defendants in the complaint.

■■ We do not find section 2 to be void in its entirety even as to defendants. (See *Colautti.*) We deem the other words and phrases in question to be sufficient to meet even the strict scrutiny test. An investigation concerning prohibited conduct not defined as being unfair would be proper. However, the complaint here alleges that the Attorney General determined it to be in the public interest to determine whether past, present or future violations of the Act by the Association had been, were or would be occurring. Such possible violations would include acts of unfairness. Because of the invalidity of the portions of section 2 prohibiting such acts, we conclude that ordering discovery which could be directed against such conduct would be violative of defendants' constitutional rights. We thus conclude that the complaint did not state a cause of action and was properly dismissed.

■■ We find no other constitutional infirmity with reference to the subpoena. Issuance of the administrative subpoena is not dependent upon the pendency of a charge or the existence of probable cause. (*Oklahoma . Press Publishing Co. v. Walling* (1946), 327 U.S. 186, 90 L. Ed. 614, 66 S. Ct. 494.) Neither defendant has fifth amendment privileges in the corporate records sought to be produced. (*Walling.*) No claim of overbreadth of the subpoena was made in the circuit court.

For the reasons stated, we affirm the order dismissing the complaints.

Affirmed.

MILLS, P. J., and LEWIS, J., concur.