RONALD BEARD *et al.*, Plaintiffs-Appellants, *v.* F. DALE GRESS *et al.*, Defendants.—(RAY MADSEN, d/b/a Ray Madsen & Associates, Defendant-Appellee.)

Fourth District    No. 16237

Opinion filed November 20, 1980.

TRAPP, J., concurring in part and dissenting in part.

David L. Curl, of Law Offices of John P. Meyer, of Danville, for appellants.

Timothy O. Smith, of Lowenstein, Hubbard & Smith, of Danville, for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

The principal question in this case is whether a real estate broker representing sellers is liable to buyers under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1979, ch. 121½, par. 261 *et seq.*) for an innocent misrepresentation, relied upon by the buyers, as to the interest rate in a mortgage which encumbered the premises sold and was assumed by the buyers. Although the wording of the act creates some confusion, we hold that such a broker is liable.

On March 28, 1979, plaintiffs, Ronald Beard and Nellie Beard, filed suit in the circuit court of Vermilion County against defendants, F. Dale Gress, Dorothy Gress, and their real estate broker, Ray Madsen, d/b/a Ray Madsen & Associates, seeking monetary damages from a transaction whereby plaintiffs purchased real estate from defendants Gress. Pursuant to the motion of defendant Madsen asserting that counts IV and VI, directed solely against him, did not state a cause of action, the circuit court dismissed those counts. Plaintiffs have appealed. We have jurisdiction because of the court's findings pursuant to Supreme Court Rule 304(a). 73 Ill. 2d R. 304(a).

Counts IV and VI alleged defendant Madsen to be a real estate broker for defendants Gress and to have negligently made misstatements concerning (1) the rate of interest on the mortgage encumbering the premises, which was assumed by plaintiffs, and (2) the length of time during which the property had been listed for sale. Plaintiffs claimed to have relied to their detriment upon these statements and sought monetary damages. Count IV merely sought relief at common law for inaccurate statements negligently made by a real estate broker. Count VI incorporated by reference all of the allegations of count IV but also alleged certain statutory violations which we later describe in detail.

624

■■ There is little dispute that count IV was properly dismissed. At common law, a real estate broker is presumably liable for his material misstatements as to matters concerning a sale of realty only if he knows or should have known of the inaccuracy. (*Lyons v. Christ Episcopal Church* (1979), 71 Ill. App. 3d 257, 389 N.E.2d 623.) Although count IV states that Madsen negligently made the statements in issue, it does not state that he knew or should have known of their falsity.

Count VI referred to both the Consumer Fraud Act and the Uniform Deceptive Trade Practices Act, hereinafter called the Uniform Act (Ill. Rev. Stat. 1979, ch. 121½, par. 311 *et seq.*). The two acts are related in that section 2 of the Consumer Fraud Act (Ill. Rev. Stat. 1979, ch. 121½, par. 262) states in part that "the use or employment of any practice described in Section 2 of the [Uniform Act] in the conduct of any trade or commerce are hereby declared unlawful."

The allegations of count VI referring to either of the two acts are contained in the following paragraphs of that count:

"14. Defendant Ray Madsen committed a deceptive trade practice as defined by Chapter 121½ §312 Ill. Rev. Stats., in that he did publish and with intent to sell as heretofore alleged, make a public statement that the mortgage assumable under defendant F. Dale Gress and Dorothy Gress name was at the rate of interest of 7½%, and that said statement constitutes an unfair and deceptive practice in that it was a misrepresentation of a material fact made with the intent that potential buyers would rely on said statement as defined by Chapter 121½ §262.

15. Defendant Ray Madsen represented or caused to be represented a material fact to-wit: that the residence of defendants Gress was listed for sale on or about January, 1979, with intent that others rely on said misrepresentations of such material fact, and that said representation constitutes an unfair and deceptive trade practice in violation of Chapter 121½ §312, and §262, Ill. Rev. Stats. in that said statement tends to cause confusion among buyers."

■■ We dispose of paragraph 15 of count VI summarily. The relief sought by the count is money damages. Regardless of whether a misrepresentation as to the length of time property has been listed for sale might give rise to a ground for rescission of a contract for sale or a sale, we do not see how such a misrepresentation can give rise to a claim for money damages. No allegations of the count answer the question. The count does not allege that because of the misrepresentation, the buyers were deceived into believing they would obtain any greater value than they received. We conclude that this paragraph does not of itself set forth a cause of action nor give aid to any other paragraphs of the count in doing so.

On the other hand, if purchasers are misled into believing that the interest rate upon a mortgage they are to assume is lower than it turns out to be, they are clearly damaged thereby. This is the theory of paragraph 14. Accordingly, we must determine whether it in combination with the rest of the count does set forth a statutory violation creating a cause of action for money damages.

Only injunctive relief is available under the Uniform Act itself. (Ill. Rev. Stat. 1979, ch. 121½, par. 313.) Furthermore, the act, itself, has been held to be applicable only to transactions involving goods and services. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634.) The transaction here involved a sale of real estate rather than goods, and Madsen furnished no services for plaintiffs. Thus, the reference in paragraph 14 to section 2 of that act (Ill. Rev. Stat. 1979, ch. 121½, par. 312) is significant only if that paragraph alleges "use of employment" by defendant Madsen of a "practice described in section 2" of that act "in the conduct of any trade or commerce." If so, a cause of action would thus be stated under section 2 of the Consumer Fraud Act. Section 10a(a) of that act (Ill. Rev. Stat. 1979, ch. 121½, par. 270(a)) permits the trial court, in its discretion, to award monetary damages for a violation thereof. Section 1(f) of that act states:

> "(f) The terms 'trade' and 'commerce' mean the *advertising, offering for sale, sale,* or distribution of any services and any *property*, tangible or intangible, *real*, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 121½, par. 261(f).

Section 2 of the Uniform Act (the act which itself is only applicable to transactions involving goods and services) contains 12 subsections setting forth acts constituting prohibited trade practices. The first 10 subsections refer to a manner of furnishing goods or services. Subsection 11 concerns the making of "false or misleading statements of fact concerning the reasons for, existence of or amounts of price reductions" and thus has no relevance to any conduct alleged here. Subsection 12 states that a person commits a deceptive practice when he "engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." The misstatement of the interest rate attributed to Madsen would be "conduct" which creates "a likelihood * * * of misunderstanding." Thus, the question arises as to whether such conduct prohibited under the Uniform Act when done in a transaction involving goods or services becomes a violation under the Consumer Fraud Act when done in regard to a real estate transaction because of the provision of section 2 of the Consumer Fraud Act which makes practices described

in the Uniform Act violations of the Consumer Fraud Act when committed "in any trade or commerce" which includes the sale of real estate. ■■ We need not answer that question because, disregarding the reference in paragraph 14 to the Uniform Act, we consider the paragraph barely sufficient to allege a direct violation of section 2 of the Consumer Fraud Act without reference to the Uniform Act. That section states in pertinent detail:

> "§2. Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, *misrepresentation* or the concealment, suppression or omission of any material fact, * * * or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, *in the conduct of any trade or commerce are hereby declared unlawful* whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 121½, par. 262.)

By the express terms of the section a misrepresentation made by a broker for a party as to a material fact in a real estate sale constitutes an actionable violation of the Consumer Fraud Act.

Question could be raised as to whether even the Consumer Fraud Act applies to sales of real estate. The act is designated as follows:

> "An Act to protect *consumers* and *borrowers* and *businessmen* against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce * * *." (Emphasis added.)

In *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634, the court held that an applicant to a private medical school, not being a consumer, borrower, or businessman had no standing to sue under the act for a breach by the school of its stated policy for granting admission. Section 1(e) of the act states:

> "The term 'consumer' means any person who purchases or contracts for the purchase of *merchandise* not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 121½, par. 261(e).)

Section 1(b) of the act (Ill. Rev. Stat. 1979, ch. 121½, par. 261(b)), in turn, defines "merchandise" as "any objects, wares, goods, commodities, intangibles, *real estate situated outside the State of Illinois,* or services."

(Emphasis added.) The argument could be raised that a purchaser of domestic realty who was not a businessman or borrower would have no standing to sue.

The foregoing argument is refuted by the history of the Consumer Fraud Act, however. Prior to October 1, 1973, section 2 of the act (Ill. Rev. Stat. 1971, ch. 121½, par. 262) expressly limited the application of its prohibitions to sales and advertisements of merchandise and made no reference to the broader category of "any trade or commerce" as now stated in that section. Prior to October 1, 1973, there was no subsection (f) to section 1 of the act defining the words "trade" and "commerce" as now provided. In fact, prior to October 1, 1973, neither the word "trade" nor the word "commerce" was used anywhere in the act. By the same amendment, the stated purpose of the act was broadened to include "businessmen" as an additional group to be protected by the act. While making the foregoing changes, the General Assembly made no change in section 1(e) of the act, which limits the term "consumer" to one who purchases or contracts for the purchase of "merchandise," nor did it change section 1(b), which does not include domestic real estate within the definition of "merchandise."

■■ In *People ex rel. Scott v. Cardet International, Inc.* (1974), 24 Ill. App. 3d 740, 321 N.E.2d 386, the appellate court held that under the act prior to October 1, 1973, where protection of businessmen was not a stated purpose of the act, it gave no coverage to the sale of a franchise. In describing the effect of the amendment, it stated that its apparent purpose was to extend protection to businessmen and to extend its scope to beyond matters connected with the sale or advertisement of merchandise to the conduct of any trade or commerce. We agree, and conclude that the broadened scope of section 2 now covers real estate transactions and permits purchasers of real estate to sue for violations of that section even though they still do not come within the definition of "consumers" set forth in the act. Any other interpretation would give the obviously unintended result of protecting businessmen who purchase real estate but giving no such protection to other citizens who do so.

Our holding that section 2 of the Consumer Fraud Act is applicable to sales of real estate is consistent with our holding in *Grimes v. Adlesperger* (1978), 67 Ill. App. 3d 582, 384 N.E.2d 537, where we relied partly on section 2 of the act in affirming a decree rescinding a contract for the sale of real estate and the restaurant business conducted thereon. The basis of the rescission was grossly inaccurate information concerning previous gross sales of the business given to the purchaser in a booklet put out by a multiple listing service. We also held neither the mental state of the person making a misrepresentation nor the diligence of the party

injured to check as to the accuracy of the misrepresentation to be material to the existence of a cause of action for that misrepresentation under section 2. We follow that precedent here.

■■ Count VI is not a model of clarity. However, because the main reason for its dismissal was that the court believed the legislation upon which it was based to be inapplicable, we do not affirm upon the basis of a lack of clarity that could be cured by amendment. The count alleged that defendant Madsen had been negligent in his misrepresentations and also that they were violative of the statutes. Although we have determined that his mental state was immaterial as to a violation of the Consumer Fraud Act, we do not consider the count to sound in negligence. It claimed statutory violations, and the negligence allegation was surplusage. Although two misrepresentations were alleged, they both arose out of the same transaction and did not make the count duplicitous. *Winn v. Underwood* (1945), 325 Ill. App. 297, 60 N.E.2d 116.

For the reasons stated we affirm the dismissal of count IV and reverse the dismissal of count VI. The case is remanded to the circuit court of Vermilion County for further proceedings.

Affirmed in part, reversed in part, and remanded.

MILLS, P. J., concurs.

Mr. JUSTICE TRAPP, concurring in part and dissenting in part:

The majority opinion agrees that the pleadings limit this action to an "innocent misrepresentation" in the context of a careless statement made without knowledge. I cannot agree that either the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud) or the Uniform Deceptive Trade Practices Act (Deceptive Practices) is properly applicable to such a transaction. In plain language, a single "innocent misrepresentation" is not a "practice" in the sense of a "repeated or customary action" or "the usual way of doing something." Webster's Seventh New Collegiate Dictionary.

Section 2 of the Consumer Fraud Act (Ill. Rev. Stat. 1979, ch. 121½, par. 262) is stated as:

> "[U]nfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', * * *."

Upon the face of the expressions employed, *i.e.*, deception, fraud, false

pretense and concealment, the language of the statute expressly contemplates a mental state. This court has stated as much in *Scott v. Association for Childbirth at Home, International* (1980), 85 Ill. App. 3d 311, 318, 407 N.E.2d 71, 76. Reviewing the words employed in this act, the court stated:

"It is noteworthy that conduct characterized by the latter words usually involves a *mens re* upon the part of the actor, while no wrongful intent or knowledge by the actor is necessary for conduct to produce a result which can be deemed to be 'unfair.' In *Colautti*, the court ruled legislation subjecting physicians to criminal liability for performing abortions upon viable fetuses under certain circumstances to be void for vagueness. The court noted that the lack of a definite *mens re* requirement in a prohibitory statute compounds its problems of clarity." 85 Ill. App. 3d 311, 318.

The conduct alleged in this complaint obviously does not come within the conduct specifically described in the Consumer Fraud Act, sections 262A through 262N. (Ill. Rev. Stat. 1979, ch. 121½, pars. 262A through 262N.) Section 2 of the Consumer Fraud Act undertakes to incorporate the use or employment of any practice described in the Deceptive Practices Act. It is fairly to be said that the complaint does not allege any "practice" on the part of the defendant.

By its language, section 2 of the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1979, ch. 121½, par. 312) in subparagraphs 1 through 11 are directed to supplying goods and services and there is no contention that they are applicable here. At least two of the subparagraphs specifically call for an "intent" to achieve a stated purpose. Without separate analyses of the language of the several subparagraphs, it is fair to say that at least the several subparagraphs call for a mental state of knowledge.

To charge the conduct pleaded here with liability, the majority opinion undertakes to employ the language found in subparagraph 12 of section 2 of the Uniform Deceptive Trade Practices Act:

"[A]ny other conduct which *similarly* creates a likelihood of confusion or of misunderstanding." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 121½, par. 312.)

By the rule of statutory construction described as *ejusdem generis*, the word "similarly" limits the "other conduct" of subparagraph 12 to that of like kind or quality as that stated in the several subparagraphs of that act. In *Farley v. Marion Power Shovel Co.* (1975), 60 Ill. 2d 432, 328 N.E.2d 318, the supreme court was asked to employ its liberal construction of the words "or other structure" so as to bring a mammoth movable shovel within the Structural Work Act. The court, however, applied the rule of construction, saying:

" 'The doctrine of *ejusdem generis* is that where a statute or document specifically enumerates several classes of persons or

things and immediately following, and classed with such enumeration, the clause embraces "other" persons or things, the word "other" will generally be read as "other such like," so that the persons or things therein comprised may be read as *ejusdem generis* "with," and not of a quality superior to or different from, those specifically enumerated.' " 60 Ill. 2d 432, 436, 328 N.E.2d 318, 320.

The pleaded conduct, upon its face, is not conduct of the kind or quality which appears in either section 2 of the Consumer Fraud Act, or section 2 of the Uniform Deceptive Trade Practices Act.

One finds statements in a number of opinions to the effect that subparagraph 12 of section 2 of the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1979, ch. 121½, par. 312) is to be given a broad application and that the good or bad faith of the seller is "not important." Upon examination, such statements prove to be essentially *dicta* for the reason that upon review the pleading alleged, or the evidence demonstrated, conduct specifically described in either or both of the respective acts.

In *Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 380 N.E.2d 790, the opinion reports that the complaint alleged intentional, deliberate and deceptive concealment of the fact of a practice. In *Perrin v. Pioneer National Title Insurance Co.* (1980), 83 Ill. App. 3d 664, 404 N.E.2d 508, the complaint alleged intentional concealment and misrepresentation.

A division of this court referred to such language in *Grimes v. Adlesperger* (1978), 67 Ill. App. 3d 582, 384 N.E.2d 537. In that case, however, the trial court found that the plaintiff had engaged in a misrepresentation which he undertook to explain, but failed to explain plausibly. In *Williams v. Bruno Appliance & Furniture Mart, Inc.* (1978), 62 Ill. App. 3d 219, 379 N.E.2d 52, the complaint alleged fraud, as well as an advertisement with intent not to sell as advertised. In *Edgewater Beach Apartments Corp. v. Edgewater Beach Management Co.* (1973), 12 Ill. App. 3d 526, 299 N.E.2d 548, the trial court found that the defendant acted with full knowledge.

One finds that the theme of broad interpretation and the use of the "other conduct" language of subparagraph 12 of the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1979, ch. 121½, par. 312(12)) is most extensively discussed in *American Buyers Club of Mt. Vernon, Illinois, Inc. v. Honecker* (1977), 46 Ill. App. 3d 252, 361 N.E.2d 1370. There, however, the defendant pleaded fraud in the inducement to entering the contract, and the trial court found that misrepresentations had been made. A substantial search of the decisions of our courts has failed to discover an instance where an action under the respective acts has been

founded upon allegations of the nature here pleaded. I would conclude that the duty of this defendant is correctly stated in *Lyons v. Christ Episcopal Church* (1979), 71 Ill. App. 3d 257, 389 N.E.2d 623.

I concur in the majority opinion in its affirmance of the dismissal of paragraph 15 of count VI. I dissent from the conclusion reached and the reversal of the trial court's dismissal of paragraph 14 of count VI, and I would affirm the trial court.