**SCARSDALE BUILDERS, INC., Plaintiff,**

v.

**RYLAND GROUP, INC., Defendant.**

No. 95 C 7161.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 16, 1996.

William V. Saracco, Gerald M. Tenner, Marks, Marks & Kaplan, Chicago, IL, for Plaintiff.

Kenneth Kyle Dort, Daniel S. Follis, Freeborn & Peters, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Ryland Group, Inc. ("Ryland") has filed its Answer and Affirmative Defenses to Count I (a breach of contract claim) of the Complaint brought against it by Scarsdale Builders, Inc. ("Scarsdale"), simultaneously filing a motion to dismiss Complaint Count II (which is grounded on the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 to 505/12).[1] Because Scarsdale's counsel has contemporaneously filed a responsive memorandum, the motion is ripe for decision.

Both of Scarsdale's claims share the common gravamen that Ryland agreed to sell Scarsdale some unimproved Illinois real estate (an 80–lot subdivision in Cook County).[2] Each company is a real estate developer engaged in the construction of residences on such lots, and Complaint Ex. B is the type of lengthy Real Estate Agreement (the "Agreement," which occupies fully 35 typewritten pages) that is typical of the acquisition of a tract development, with staged drawdowns of the lots for purposes of the residential construction. Complaint Count I alleges that Ryland breached its representation under Agreement ¶ 10.1(f) when it refused to pay the fees for sanitary connections and water tap-ons to the lot. Count II claims that the selfsame refusal violated the Act because Ryland's promise to bear those fees (either an express or an implied promise) was false.

---

1. Citations to that statute (the "Act") will take the form "Act § —," in each instance referring to the section number following the "/" sign.

2. Although Ryland's Answer to Count I denies that, this Court must of course accept Scarsdale's version as gospel for purposes of the present motion.

For a number of reasons, including the possibility that if broadly construed the Act could effectively swallow up both the Illinois common law of fraud (unlike that tort, the Act does not require detrimental reliance [3]) and the Illinois common law of contracts (by characterizing any broken promise as a "false promise" within the meaning of the Act), the statute has been an extremely prolific source of litigation. When those factors are coupled with the checkered history of the Act, under which some amendments aimed at certain perceived problems have made its coverage extraordinarily opaque, motions of the present type frequently prove more complex than they ought to be.

For example, the Act still bears its original short title of "Consumer Fraud and Deceptive Business Practices Act" (Act § 12), but that has tended in common usage to be shortened to "Consumer Fraud Act" alone (see, e.g., the recent opinion by this Court's colleague Honorable Marvin Aspen in *Industrial Specialty Chems., Inc. v. Cummins Engine Co.*, 902 F.Supp. 805, 811 (N.D.Ill. 1995)—a usage that follows the lead of many state court decisions, and indeed has been employed by this Court in the course of opinions dealing with situations that *are* consumer-fraud-based). And although the actual statutory title is framed in a way that does not indicate that the second half of its conjunctive elements—"Deceptive Business Practices"—is also modified by a limiting reference to "consumers," the use of the shorthand version has led to such statements as (*Industrial Specialty, id.*):

> As its name indicates, the Consumer Fraud Act is primarily concerned with protecting consumers.

Yet Act § 2, which identifies the "[u]nfair methods of competition and unfair or deceptive acts or practices" that the Act declares unlawful, says nothing at all about limiting those matters to consumers as victims, and Act § 10a(a)—which is the statutory source for actions such as this one—confers a private cause of action not on "consumers" alone but on "[a]ny person who suffers damage as a result of a violation of this Act committed by any other person." And of course Act § 1(c) gives the term "person" the usual all-encompassing definition (including for example partnerships, corporations, business entities and associations as well as individuals). Moreover, the frequent bobtailing of the Act's title to "Consumer Fraud Act" has tended to obscure the fact that its full title (with emphasis added) says that it is "[a]n Act to protect consumers *and borrowers and businessmen* against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce ..." (see Historical and Statutory Notes to Act § 1, West's Smith–Hurd Illinois Compiled Statutes Annotated at 562 (1993)).

Whatever may be the source of the apparent misapprehension in some quarters that the Act is solely focused on consumer protection (despite the just-discussed compelling evidence to the contrary), a good deal of case law had developed over the years tending to suggest that conduct would not be Act-violative unless it were of the type that would injure consumers in general. To scotch that misunderstanding, effective January 1, 1990 the General Assembly amended Act § 10a(a) so that the existing statutory provision, which conferred a private cause of action upon any injured "person," was followed with this statement:

> Proof of a public injury, a pattern, or an effect on consumers generally shall not be required.

Indeed, in a somewhat different respect that is potentially relevant here, the Act itself has created a major possibility of confusion by the manner in which it is drafted. Thus Act § 1(e) and (b) set out these definitions (emphasis added):

> (e) The term "consumer" means any person who purchases or contracts for the purchase of *merchandise* not for resale in the ordinary course of his trade or business but for his use or that of a member of his household;

> \*    \*    \*    \*    \*    \*

---

3. Act § 2 declares that the use of false promises with the intention of reliance by others is unlawful whether any person has in fact been misled, deceived or damaged thereby.

(b) The term "merchandise" includes any objects, wares, goods, commodities, intangibles, *real estate situated outside of the State of Illinois,* or services;

Those provisions certainly make it plain that the buyer of real estate *in* Illinois is *not* a "consumer" in statutory terms. If then the Act's coverage were really limited to the protection of "consumers" as defined, Scarsdale's Count II would be knocked out of the box without further discussion.[4]

But any such analysis would be unduly simplistic and at odds with the existing case law. Virtually every case emanating from the Illinois Appellate Courts (the Illinois Supreme Court has not had occasion to deal with the question) has rendered effectively meaningless (usually without even discussing) the narrowing coverage of the Act that might be thought to have been suggested by the definitions of "consumer" and "merchandise" looked at alone. Four of the five Appellate Districts (see, e.g., *Seligman v. First Nat'l Inv., Inc.,* 184 Ill.App.3d 1053, 1063, 133 Ill.Dec. 191, 197, 540 N.E.2d 1057, 1063 (1st Dist.1989); *Randels v. Best Real Estate, Inc.,* 243 Ill.App.3d 801, 805, 184 Ill.Dec. 108, 111, 612 N.E.2d 984, 987 (2d Dist.1993); *Hoke v. Beck,* 224 Ill.App.3d 674, 679, 587 N.E.2d 4, 8 (3d Dist.1992); and *Beard v. Gress,* 90 Ill. App.3d 622, 626–28, 46 Ill.Dec. 8, 11–12, 413 N.E.2d 448, 451–52 (4th Dist.1980)[5]) have treated claims in which the Act has been sought to be invoked by the purchasers of Illinois real estate as though such claims were actually or potentially viable (the only possible exception being the sale by an individual selling his or her own home—see *Zimmerman v. Northfield Real Estate, Inc.,* 156 Ill.App.3d 154, 168, 109 Ill.Dec. 541, 550, 510 N.E.2d 409, 418 (1st Dist.1986), followed in *Anderson v. Stowell,* 183 Ill.App.3d 862, 863–64, 132 Ill.Dec. 289, 290, 539 N.E.2d 852, 853 (3d Dist.1989)[6]).

Only one Appellate District has suggested the possibility of, though it did not expressly adopt, the opposite view (*Maguire v. Holcomb,* 169 Ill.App.3d 238, 244–45, 119 Ill.Dec. 932, 935–36, 523 N.E.2d 688, 691–92 (5th Dist.1988)). Ironically, this Court's colleague Honorable Ann Williams cited only *Maguire* in the course of a very brief statement dismissing a Consumer Fraud Act claim, brought by a corporate purchaser of Illinois real estate, on the ground that the purchaser was not a "consumer" within the Act's meaning (*New Process Steel Corp. v. Boulevard Bank N.A.,* No 90 C 7206, 1991 WL 70843 1991 U.S.Dist. LEXIS 5698 (N.D.Ill.App.29)). It is plain that Judge Williams was unaware of *Maguire*'s maverick status (her opinion did not refer to, let alone discuss, the host of decisions going the other way), nor does *New Process Steel* indicate that Judge Williams had been apprised of the other complicating (and often conflicting) factors identified in this opinion.

This Court, obligated as it is by *Erie v. Tompkins* to decide the current motion under Illinois law, will follow the prevailing view and not the *Maguire–New Process Steel* aberration. Hence in terms of the literal reading of the Act's provisions—that is, the

---

**4.** In fact Scarsdale would be doubly disqualified in those terms. As a developer acquiring lots for resale, it would also fail the statutory test requiring the purchase by a "consumer" to be "not for resale in the ordinary course of his trade or business."

**5.** *Beard* contains the most extensive discussion of the language and history of the Act. Many of the later decisions do not address the issues under consideration here at all, though a number of them cite *Beard* as authority.

**6.** This Court has also located *Strauss v. Cruz,* 259 Ill.App.3d 608, 609–10, 197 Ill.Dec. 465, 466, 631 N.E.2d 468, 469 (3d Dist.1994), a decision that adhered to the *Zimmerman–Anderson* rulings in part because the court rejected plaintiff's argument that the earlier-quoted January 1, 1990 amendment to Act § 10a(a) called for a different result. In the course of the *Strauss* opinion the court quoted Act § 10b(4) in a way that, if it were really reflective of that section's provisions, would take *all* actions based on false, misleading or deceptive communications from *any* seller of Illinois real estate out of the statute's purview—a reading that would be fatal to Scarsdale's Count II without the need for any further discussion. But the *Strauss* quotation of Act § 10b(4) reflects (obviously unintentionally) a misreading of the statute, something that is obvious from looking at the portion of the statute that the quotation omits (having replaced the omitted language with ellipses). *Erie v. Tompkins* does not require this Court to adhere to that patent error, and *Strauss* will not be accepted as a predicate for the dismissal of Count II.

interaction of Act §§ 2 and 10a(a) to confer private rights of action—it is quite irrelevant that Scarsdale is not a statutorily defined "consumer." [7]

That however is not the end of the story. As suggested at the outset of this opinion, the Illinois courts have always been keenly aware that if no limiting construction were to be given to the Act's coverage, it could supplant common law jurisprudence to an unjustified extent—a result that the courts do not view as having been intended by the Illinois General Assembly. So that prospect has been avoided by the courts' adoption of some doctrines that would cabin any potential for such an all-embracing literal reading of the statute.

■ Before the 1990 amendment to the Act, one such doctrine took the form of a judicial gloss that limited the Act's availability in disputes between businesses, as exemplified by *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 190 Ill.App.3d 524, 533, 137 Ill.Dec. 409, 417, 546 N.E.2d 33, 41 (2d Dist.1989) (relying in substantial part on two federal district court opinions, including one written by this Court):

> Thus, where the dispute involves two businesses who are not consumers, the proper test is ... whether the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns.

And even though the 1990 amendment thereafter declared that "[p]roof of a public injury, a pattern, or an effect on consumers generally" is not required to sustain a claim under the Act, the cases since that amendment have nonetheless continued to limit the availability of the Act in disputes such as the present one. *Lake County Grading Co. v. Advance Mechanical Contractors, Inc.*, 275 Ill.App.3d 452, 458–59, 211 Ill.Dec. 299, 305–06, 654 N.E.2d 1109, 1115–16 (2d Dist.1995)

(most citations omitted) summarizes the current state of the law relevant to the litigants' quarrel here:

> Shortly after our decision in *Downers Grove*, the legislature amended the Act to provide specifically that "[p]roof of a public injury, a pattern, or an effect on consumers generally shall not be required" to recover damages under the Act. (Pub.Act. 86–801, eff. January 1, 1990; 815 ILCS 505/10a West 1994).).... [W]e believe the 1990 amendment should not be viewed as a repudiation of *Downers Grove*.
>
> Although the amended section 10a states that plaintiffs may recover damages without showing "an effect on consumers generally," post-amendment case law has continued to recognize that the Act does not apply to every commercial transaction regardless of the relationship between the parties. Courts continue to adhere to the rule that "[e]very individual breach of contract between two parties does not amount to a cause of action under the Act." Indeed, if litigants could invoke the Act merely by alleging an intentional or fraudulent breach of a contract, common-law breach of contract actions would be supplemented in every case with an additional and redundant remedy under the Act.
>
> Thus, since *Downers Grove* and the 1990 amendment, courts have consistently resisted attempts by litigants to portray otherwise ordinary breach of contract claims as causes of action under the Act. Accordingly, the following language of the rule stated in *Downers Grove* remains viable: where a plaintiff attempts to allege a violation of the Act in a case which appears on its face to involve only a breach of contract, the relevant inquiry is "whether the alleged conduct * * * implicates consumer protection concerns." *Downers Grove*, 190 Ill.App.3d at 534, 137 Ill.Dec. 409, 546 N.E.2d 33.[8]

---

7. There are a host of other places in the Act where statutory "consumer" status is made a necessary ingredient of a claim (see, e.g., Act §§ 2B, 2C, 2D, 2E, 2F, 2J.1, 2J.2, 2K, 2L, 2N, 2P and 2Q). But Act § 10a(a) is not one of them.

8. [Footnote by this Court] One thought should be added. Scarsdale would have it that it was really a "consumer" in its relation to Ryland—pre-

sumably in the common-usage, rather than statutory, meaning of that word. But that notion is wholly unpersuasive. "Consumer" is of course not synonymous with "purchaser"—and Scarsdale cannot be said to have been a "consumer" of the 80 lots without seriously distorting the English language. And Scarsdale's related contention that it was somehow a "consumer" of

That approach (one that is shared by other Illinois Appellate Court opinions) might perhaps be viewed as the equivalent of judicial legislation: the courts' refusal to read a statute literally because of their policy concerns as to the consequences of such a reading.[9] But as already emphasized here, the federal courts' role in diversity of citizenship cases is simply to conform to state law, including the state courts' reading of state statutes. And although the Illinois Supreme Court has not had occasion to speak to the subject, the overriding message from the intermediate appellate courts is exceedingly plain. Under *Lake County Grading* and other like decisions, the judicially-imposed limitations on the Act's application are fatal to Scarsdale's Count II.

### Conclusion

This opinion has had to travel a somewhat tortuous path, but the result is straightforward. For the reasons that have been stated here, Ryland's motion to dismiss Complaint II is granted.

---

Ryland's services would require an equal distortion of the Agreement's provisions on which Scarsdale seeks to rest its case.

**9.** In fairness to the state judiciary, the 1990 amendment to Act § 10a(a) repaired only part of the problems created by the less-than-ideal draftsmanship that had gone into the statute. Thus confronted with a choice between (1) reading and applying the amended Act as written (in hopes that the undesirable consequences of that treatment would then bring the legislators back to the drawing board to revamp the scope of the Act in a sensible way) and (2) engaging in the quasi-legislative construction of the Act described in the text, the Illinois courts have chosen the latter alternative—a course that appears to produce more just results more quickly, though it may leave something to be desired from the governmental purist's point of view.