ROBERT SAXBY, Appellee, *vs.* OTTO C. SONNEMANN, Appellant.

*Opinion filed October 28, 1925—Rehearing denied December 2, 1925.*

1. CONSTITUTIONAL LAW—*member of one department of government cannot exercise power belonging to another department.* Article 3 of the constitution prohibits any member of one department of government from exercising any power properly belonging to another department of the State government, and the prohibition is not limited to persons of one department acting as officers of another department.

2. PLEADING—*what is not a statement of conclusion in bill—demurrer.* In a bill to enjoin the payment of a salary it is not a conclusion of law to say that one is appointed a deputy or an assistant to another or that he exercises the powers of an officer or performs the duties thereof, but such allegation constitutes the statement of a fact which is admitted by demurrer.

3. WORDS AND PHRASES—*meaning of words "deputy" and "assistant."* The term "deputy" means one who is appointed to substitute for another and is empowered to act for him in his name or in his behalf, and an "assistant" is a helper or one who assists.

4. ATTORNEY GENERAL—*Attorney General exercises powers and duties of such officer at common law.* The Attorney General is the chief law officer of the State, and in the creation of that office there were engrafted upon it all the powers and duties of the Attorney General as the same were known at common law.

5. SAME—*Attorney General may appoint deputies or assistants.* The Attorney General has power to appoint the necessary deputies or assistants to aid in carrying out the many duties of his office.

6. SAME—*member of legislature cannot act as deputy to Attorney General—salary.* A member of the legislature cannot exercise the powers of a deputy or assistant to the Attorney General under the Search and Seizure act, as such action is in violation of article 3 of the constitution, prohibiting a member of one department of the State government from exercising the powers of another department, and although he has actually performed the duties of a deputy he will not be entitled to the salary as a *de facto* officer and may be required to account for the same where it has been paid.

APPEAL from the City Court of Litchfield; the Hon. HARRY C. STUTTLE, Judge, presiding.

LANE, DRYER & BROWN, for appellant.

GEORGE P. O'BRIEN, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

The appellee filed a bill in the city court of the city of Litchfield, Montgomery county, on behalf of himself and other tax-payers of the State of Illinois, charging that the appellant had wrongfully and unlawfully received out of the State treasury the sum of $3541.61 on warrants drawn in his favor as compensation as deputy and assistant to the Attorney General in the enforcement of the provisions of an act known as the Search and Seizure act while the appellant was a member of the General Assembly of the State. The bill sets out that the appellant was on November 5, 1918, duly elected a member of the General Assembly of the State of Illinois for the Thirty-eighth Senatorial District; that he qualified and attended upon and participated in the sessions of the Fifty-first General Assembly; that said sessions were adjourned on the 30th day of June, 1919; that appellant continued to hold his office during a period of two years succeeding January 8, 1919, the date on which he qualified as such representative. It is further alleged that there was enacted during the session of the Fifty-first

General Assembly an act entitled "An act to restrict the manufacture, possession and use of intoxicating liquor within prohibition territory," approved June 21, 1919, and effective July 1, 1919, known as the Search and Seizure act; that at the same session of the General Assembly another act was passed, entitled "An act making an appropriation to be used in aiding in the enforcement of the provisions of 'An act to restrict the manufacture, possession and use of intoxicating liquors within prohibition territory,'" approved June 28, 1919; that by the latter act there was appropriated to the Attorney General of the State for the purpose of enforcing the Search and Seizure act the sum of $50,000, and the Auditor was by it directed to draw warrants on the State treasury, from time to time, upon vouchers certified to by the Attorney General; that the appellant was in attendance at the sessions of the legislature when these acts were passed and participated in the consideration and passage thereof and voted in favor of the passage of both acts; that on July 1, 1919, he was appointed by the Attorney General "as an appointee, deputy of and assistant to the Attorney General of said State, to aid and assist in the enforcement of the provisions of said act entitled 'An act to restrict the manufacture, possession and use of intoxicating liquor within prohibition territory.'" The bill also charges that on that date the Attorney General contracted with the appellant, while the latter was a member of the legislative department, to serve as such appointee, deputy and assistant for the sum of $208.33 per month, beginning August 1, 1919, and ending December 31, 1920, to be paid out of said appropriation; that he "became an appointee and deputy and assistant to said Attorney General of this State and thereby became and was a part of the executive department of the government of this State, and pretended to act as such and to exercise the powers and authority of the executive department by virtue of his appointment." The bill charges that the appellant, in accepting such

apointment as deputy and appointee of and assistant to the Attorney General of the State, and in contracting with the Attorney General to receive and accept moneys out of the State treasury appropriated by the General Assembly of which he was then a member, was acting wholly contrary to the provisions of the constitution of the State of Illinois, and that he should be required and compelled to account for and re-pay such sums into the State treasury. It is also alleged that the appointment of the appellant and his acting in the capacity in which he was appointed are in violation of article 3 of the constitution and of section 15 of article 4 thereof. The appellant demurred to the bill on the ground that it did not allege facts showing a violation of the provisions of the constitution or of a statute; that there is no statute creating the office of prohibition enforcement officer; that he was not an officer as defined in the constitution, and did not become interested, directly or indirectly, in any contract of the State authorized by any law passed during the term at which he was elected to the legislature; that under the allegations of the bill he by virtue of such appointment was not an officer but an employee of the Attorney General, and that under the allegations of the bill he was a *de facto* officer, and therefore money paid to him cannot be recovered by or for the State. This demurrer was overruled, and the appellant abiding the same, a decree was entered against him, requiring that he account for and pay over the sum alleged in the bill and fixing attorney's fees at $600. He brings the case here by appeal.

The first question presented on this record is whether there is authority in law by which the appellant, while a member of the General Assembly, may assist in any way in the discharge of the duties of the Attorney General as they are set out in the Search and Seizure act. Article 3 of the constitution provides: "The powers of the government of this State are divided into three distinct departments—the legislative, executive and judicial; and no per-

son, or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted." The exceptions to this article, "directed or permitted," are to be found in section 9 of article 4 and section 30 of article 6 of the constitution. By the former it is provided that each house of the General Assembly shall determine its rules of procedure and shall be judge of the election and qualifications of its members and shall choose its officers. It also provides for the expulsion of a member or his punishment. The latter section gives to the General Assembly power, on conditions there specified, to remove any judge from office.

In a representative government all powers of government belong ultimately to the people in their sovereign corporate capacity. Under such a government the people may distribute, for the purposes of government, the various powers thereof. These they have divided into three departments: legislative, executive and judicial. By article 3 of the constitution it is provided that "no person, or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others." By this provision the people intended to provide, and did provide, a complete separation of the branches and completely deprived a member of one branch of authority to exercise any power properly belonging to the other two branches. Under the constitution of 1818 nearly all the important offices of government were filled by an election on joint ballot of the two houses of the legislature, alone. This system gave rise to injurious combinations affecting legislation and combining the departments of government. In forming the constitution of 1848 one of the things sought was to prevent the performance of duties and exercise of powers in one department of government by members of either of the other departments. In order that this might be brought about there was inserted in that consti-

tution, as article 2, a provision in effect the same as article 3 of the present constitution. Section 7 of article 3 of the constitution of 1848 provided that no person elected to the General Assembly should receive any civil appointment within the State from the Governor, the Governor and senate, or the General Assembly, during the term for which he was elected, and also provided that no member of the General Assembly should be interested, either directly or indirectly, in any contract with the State, or any county thereof, authorized by any law passed during the time for which he shall have been elected or during one year after the expiration thereof. This provision became section 15 of article 4 of the constitution of 1870. These provisions make clear the purpose of the framers thereof to keep separate the different departments of government.

Was the appellant authorized to accept the position of deputy or assistant to the Attorney General in the enforcement of the Search and Seizure act and perform the duties of such position, or was such in violation of article 3 of the constitution, as alleged in the bill? The language is plain that no person of one department shall exercise any power properly belonging to another department of the State government. It is admitted that the appellant belonged to the legislative department of the government, and it must be conceded that he had no authority to exercise any power properly belonging to the executive department of government, of which department the Attorney General's office is a part. Therefore, if what he did, as charged in the bill, amounted to an exercise of powers of the executive department his acts were void and he was in nowise entitled to compensation therefor.

The appellant contends that the above provision can apply only to cases where a member of one department acts as an officer in another department, and not to one acting in a purely ministerial capacity. There is no language in the article which limits the application of it to persons of

one department acting as officers of another department. The language is, "no person" shall exercise "any power" properly belonging to another department, and the simple question arises here, Did the appellant, in the service performed, exercise any of the powers of the executive department of the State government? The bill charges, as we have seen, that he became a deputy and an assistant to the Attorney General in the enforcement of the Search and Seizure act, and while a demurrer does not admit conclusions of law or allegations not properly pleaded, we are of the opinion that it is not pleading a conclusion to allege that one becomes a deputy or assistant of or to another. Each of these terms has a fixed and well-defined meaning. The term "deputy" is defined by standard lexicographers as one who is appointed to substitute for another and empowered to act for him in his name or in his behalf. A special deputy is one appointed to exercise some special function or power of the official or person for whom he is appointed. An "assistant" is one who assists; a helper.

But it is said there is no law authorizing the appointment of an assistant Attorney General for the purpose of enforcing the Search and Seizure act, nor for any other purpose except that relating to inheritance taxes, as provided by the statute; and this is true. By section 1 of article 5 of the constitution of 1870 the office of Attorney General is made a part of the executive department of the State. The constitution confers no express powers upon the Attorney General and prescribes no express duties for him. It provides that he shall perform such duties as may be prescribed by law. The office of Attorney General was one known to the common law, and under it he had well-known and well-defined powers. It was not necessary to enumerate all the powers vested in the Attorney General or include them in the constitution. The Attorney General is the chief law officer of the State, and in the creation of that office there was engrafted upon it all the powers and duties of the Attorney

General as the same were known at common law. (*Fergus
v. Russel,* 270 Ill. 304; *Hunt* v. *Chicago Horse Railway Co.*
121 id. 638.)   It is, of course, easily seen that in a great
State such as this the multiplicity of duties of the Attorney
General forbid personal attention to all of them.   He must,
and does, have power to appoint the necessary deputies or
assistants to aid in carrying out those duties.   By section 2
of the Search and Seizure act it is provided that whoever
manufactures, sells or keeps for sale any intoxicating liquor
for medicinal, sacramental, chemical or manufacturing pur-
poses in prohibition territory shall first secure from the At-
torney General of the State a permit to manufacture, sell
or keep for sale such intoxicating liquor.   That section also
provides that the person desiring such permit shall file a
written application with the Attorney General, and pre-
scribes what the application shall contain and the form of
the permit.   This section not only imposes upon the Attor-
ney General the duty to issue such permit in a proper case,
but it likewise imposes upon him the necessity of determin-
ing what is a proper case.   This requires investigation, for
which the Attorney General must have assistants or depu-
ties.   Subsequent sections of the act provide a penalty for
violation of its terms, among which is forfeiture and can-
cellation of any permit issued by the Attorney General.   As
chief law officer of the State the Attorney General is em-
powered to carry out the enforcement of the Search and
Seizure act, and the appropriation of $50,000 herein re-
ferred to was made for the purpose of defraying the ex-
penses of his office in enforcing that act, and if the ap-
pellant, either as an employee or an officer, exercised any
power properly belonging to the Attorney General's office,
as charged in the bill, he must account.   The charge is
definite that he purported to exercise the powers of the
office.   This is an allegation of a fact.   While the bill does
not describe his particular duties, it is not a conclusion of
law to say that one is appointed a deputy or an assistant,

or that he exercises the powers of an office or performs the duties thereof. It may readily be conceived that one who serves as an investigator merely, collecting facts, and who thereby prepares himself to become a witness in a lawsuit, or who engages in similar service, is not exercising powers peculiar to the department of government by which he is employed, and is not, therefore, within the inhibition of article 3 of the constitution, though he may be a member of a different department of government. This is so because such employee exercises no powers of the department in which he works. If such is the fact in this case it was a matter of affirmative defense which appellant could have pleaded. By abiding his demurrer he has admitted that he served as a deputy or assistant for the purpose of enforcing the Search and Seizure law.

In *McQuade* v. *City of Joliet,* 293 Ill. 515, the question arose whether the persons holding the offices of county judge, circuit judge and judge of the probate court could constitute a trial board to hear complaints filed with the police and fire commissioners against members of those departments. It was held that the powers and duties devolving upon such trial board were executive or ministerial rather than judicial, and that members of the judicial department could not, under article 3 of the constitution, exercise any powers properly belonging to the executive department of the government; that while the trial board provided for in the act was not a court, persons of whom it was to be constituted were of the judicial department, and were prevented by article 3 of the constitution from exercising executive powers, and that the act was therefore void. In *People* v. *Brady,* 275 Ill. 261, the same principle was announced. While it was held in *People* v. *Morgan,* 90 Ill. 558, and *People* v. *Hoffman,* 116 id. 587, that the power of a member of one department of government to make appointments in another department of government does not violate arti-

cle 3 of the constitution, it was so held on the ground that such appointment does not constitute an exercise of powers of the department to which the appointments are made. In *Bottom* v. *City of Edwardsville*, 308 Ill. 68, it was held that a master in chancery is a ministerial and not a judicial officer, and therefore duties and powers of a judicial officer cannot be conferred on him. It was held in *People* v. *Dunne*, 258 Ill. 441, following *People* v. *Bissell*, 19 id. 229, that under article 3 of the constitution the judicial department is without jurisdiction to award a writ of *mandamus* to compel the Governor to perform a duty, either ministerial or discretionary, imposed upon him by his office.

The allegations of the bill admitted by the demurrer were sufficient to require the appellant to answer, and the chancellor did not err in overruling the demurrer.

The appellant contends that if he was an officer he was a *de facto* officer, only, and having actually performed the duties, the salary which has been paid to him during the time he was in that position cannot be recovered by or for the State. This is the rule in the case of a *de facto* officer. (*People* v. *Schmidt*, 281 Ill. 211.) The provision of the constitution is, that one who is a member of one department of the State government cannot exercise the powers of another department. There are no circumstances under which a member of the legislature could become a *de facto* officer of the executive department.

The views herein expressed are conclusive of the case, and it does not become necessary to discuss other questions raised on the record.

The decree of the city court of Litchfield will be affirmed.

*Decree affirmed.*