THE PEOPLE *ex rel.* THE DIRECTOR OF CORRECTIONS, Plaintiff-Appellee, v. WAYNE EDWARDS, Defendant-Appellant.

Fifth District   No. 5—02—0455

Opinion filed June 22, 2004.

Wayne Edwards, of Ina, appellant *pro se.*

Lisa Madigan, Attorney General, of Chicago (Gary Feinerman, Solicitor General, and Timothy K. McPike, Assistant Attorney General, of counsel), for appellee.

JUSTICE KUEHN delivered the opinion of the court:

The Illinois Department of Corrections (the Department) sued the defendant, Wayne Edwards, an inmate who was then incarcerated at Big Muddy Correctional Center, to recover costs incurred during the inmate's incarceration. The defendant appeals the circuit court's decision allowing the Department to attach $4,000 of a bank account in his name. We affirm.

## BACKGROUND

The defendant, who organized and supervised the wholesale and

street-level retail distribution of heroin for the Chicago Black Souls street gang, was convicted of criminal drug conspiracy, and on January 9, 1998, he was sentenced to serve 30 years in prison and fined $150,000. See *People v. Edwards*, 337 Ill. App. 3d 912, 788 N.E.2d 35 (2002). Although the defendant filed multiple pleadings in the instant case, only those pleadings or responses of either party that are essential to this appeal will be discussed.

On December 20, 2001, the Department filed a complaint to recover costs it had incurred during the defendant's incarceration, pursuant to section 3—7—6 of the Unified Code of Corrections (Unified Code) (730 ILCS 5/3—7—6 (West 2000)). The Department calculated the total cost of the defendant's incarceration at $61,844.31. The Department attached a statement to the complaint documenting the cost of incarcerating the defendant from January 23, 1998, through November 13, 2001. It also attached the verification of Jack Huffman, the supervisor of the accounting section of the Department, his letter of certification, and an affidavit certifying that the cause of action sought money damages in excess of $50,000.

On January 7, 2002, the Department moved for an order of attachment, asserting that the defendant had attachable property in two accounts—his inmate trust account with the Department and a bank account with the Du Quoin State Bank (the Bank) in Du Quoin, Illinois—and that under section 4—107 of the Code of Civil Procedure (the Code) (735 ILCS 5/4—107 (West 2002)), no plaintiff's bond was necessary because the Department, a State agency, was the plaintiff. The affidavit of Jack Huffman, filed pursuant to section 4—104 of the Code (735 ILCS 5/4—104 (West 2002)), in which he verified the amount owed by the defendant for the costs of his incarceration, was appended to the pleading.

On January 7, 2002, the trial court entered the order for attachment, returnable on or before January 31, 2002, and the order issued on the same date, as did notice and interrogatories to the garnishees, the Department and the Bank. The garnishees were notified that they were to "hold any property, effects, choses in action[,] or credits in their possession or power belonging to the defendant" and not to pay them over to the defendant because of the plaintiff's pending lien. Nonwage garnishment summonses were served on the Bank on January 9, 2002, and on the Department and the defendant on January 10, 2002. On January 14, 2002, the Bank informed the court that the defendant's account had a balance of $6,041.90. The Department filed its interrogatory answers on January 31, 2002, indicating that the defendant's trust fund balance was $98.01, the defendant having "spent down" his trust account from a total of $1,171.65 to less than

$100 between November 27, 2001, less than a month before the Department filed its complaint, and January 29, 2002. On January 31, 2002, the trial court ordered the Bank to freeze the defendant's savings account.

The defendant was served on February 1, 2002, with, *inter alia*, the garnishment summons, interrogatories, the answers to the interrogatories of the Bank and the Department, and the January 31, 2002, garnishment order. On February 11, 2002, the defendant filed a "response to the order of attachment" and a motion to dismiss the action against him. He contended, *inter alia*, that the complaint was defective because it was signed by an assistant Attorney General, rather than by the Attorney General of the State of Illinois, as required by section 3—7—6(d) of the Unified Code (730 ILCS 5/3—7—6(d) (West 2000)) governing reimbursement for the expenses of incarceration. He filed a second motion to dismiss the action on February 11, 2002, in which he asserted as one ground for dismissal that the order of attachment should be dismissed because it failed to identify the specific property to be attached.

On April 9, 2002, the parties appeared in court and oral argument was heard on the first and second motions to dismiss. The State also filed a written response to the defendant's first motion to dismiss. It argued that under the holding in *Saxby v. Sonnemann*, 318 Ill. 600, 607, 149 N.E. 526, 529 (1925), assistant Attorneys General were empowered to file and prosecute civil actions through their appointment by the Attorney General. No written response to the second motion to dismiss appears in the record on appeal. However, the docket sheet notes, which are a part of the common law record and are presumed to be correct (see *People v. Lilly*, 291 Ill. App. 3d 662, 665, 687 N.E.2d 1070, 1073 (1997), citing *People v. Brooks*, 158 Ill. 2d 260, 274, 633 N.E.2d 692, 698 (1994)), indicate that arguments were heard on both of the defendant's February 11, 2002, motions to dismiss and his amendments to them. The defendant contended, *inter alia*, that the circuit court lacked jurisdiction over the complaint because the Bank "sent the Notice for Order of Attachment and Garnishment Summons [to the defendant]." The defendant's motions to dismiss, as amended, were denied. Two separate orders prepared by the Attorney General, in which the arguments of the State in opposition to the defendant's first and second motions to dismiss were set forth in brief form, are a part of the record and were signed by the trial court on April 9, 2002. The State did not oppose the defendant's oral motion to assert his right to exempt $2,000 from attachment.

The State moved for a summary judgment on June 10, 2002. It argued that neither the fact of the defendant's incarceration nor the

cost of that incarceration was contested. The defendant's responsive motion was filed on June 17, 2002, and on June 24, 2002, the trial court granted a summary judgment for the State. It granted the defendant an exemption for $2,000 of the defendant's account and directed the Bank to surrender $4,000 of the defendant's savings account to the State to apply against the defendant's debt of $61,844.31. The defendant filed no further pleadings in the circuit court and proceeded with the instant appeal.

## CONTENTIONS ON APPEAL

The defendant claims that the grant of a summary judgment for the State was erroneous. He contends that (1) the circuit court lacked subject matter jurisdiction over the action because the proceedings did not comport strictly with statutory requirements, (2) he was entitled to the grant of his first motion to dismiss because only the Attorney General is empowered to file actions for the reimbursement of expenses pursuant to section 3—7—6 of the Unified Code, (3) he was entitled to the grant of his second motion to dismiss because the State did not file a written response to his assertion that the order for attachment failed to specify the property to be attached, and (4) the State denied him due process by failing to comply with the postjudgment garnishment statute, section 12—705 of the Code (735 ILCS 5/12—705 (West 2002)), when it did not mail him a copy of the garnishment notice and summons within two days of their service on the Bank and the Department. He seeks the reversal of the trial court's denial of his motions to dismiss and its grant of the State's motion for a summary judgment, and he also seeks a remand of the case to the circuit court for a trial.

## STANDARD OF REVIEW

Each of the issues raised by the defendant involves a pure question of law, making the *de novo* standard of review applicable. *Williams v. Staples*, 208 Ill. 2d 480, 487, 804 N.E.2d 489, 492 (2004).

## DISCUSSION

### I. Jurisdiction

■ The defendant contends that no subject matter jurisdiction existed in the trial court because the State did not file affidavits as required by sections 12—701 and 4—104 of the Code (735 ILCS 5/12—701, 4—104 (West 2002)) "at the commencement of the suit." He cites, *inter alia, Ford v. Transocean Airlines, Inc.*, 28 Ill. App. 2d 234, 171 N.E.2d 225 (1960), in support of his position. *Ford* held that because attachment was unknown at common law, the statutory nature of the proceeding mandated that the affidavit required by the

statute in question had to meet " 'all the essential requirements of the statute' " in order to confer subject matter jurisdiction on the court. *Ford*, 28 Ill. App. 2d at 238, 171 N.E.2d at 227, quoting *Martin v. Schillo*, 389 Ill. 607, 610, 60 N.E.2d 392, 393 (1945).

His position is incorrect. "Subject matter jurisdiction" refers to the power of the court to hear and determine cases of the general class to which the action belongs, and "[w]ith the exception of the circuit court's power to review administrative action, which is conferred by statute, a circuit court's subject matter jurisdiction is conferred *entirely* by our state constitution." (Emphasis added.) *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334, 770 N.E.2d 177, 184 (2002). The trial court thus had jurisdiction over the controversy before it.

Moreover, the State did not file the action in question pursuant to the postjudgment garnishment statute, thus obviating any need to comply with the affidavit requirement of section 12—701 of the Code (735 ILCS 5/12—701 (West 2002)). It did, however, file the affidavit required by section 4—104 of the *prejudgment* attachment statute— section 4—104 of the Code (735 ILCS 5/4—104 (West 2002))—under which the order for attachment was sought. The affidavit, filed January 7, 2002, was filed at the time the motion for an order of attachment was filed, in compliance with the statute.

## II. Attorney General as Complainant

■ Contrary to the defendant's contention, he was not entitled to the grant of his first motion to dismiss. Section 3—7—6(d) of the Unified Code provides that the director of the Department "or the [d]irector's designee" may authorize the Attorney General to seek reimbursement from inmates for the cost of their incarceration. 730 ILCS 5/3—7—6(d) (West 2000). In turn, the Attorney General has the implied power to delegate the tasks of filing and prosecuting actions to assistant Attorneys General. See *Saxby v. Sonnemann*, 318 Ill. 600, 607, 149 N.E. 526, 529 (1925) ("It is, of course, easily seen that in a great State such as this the multiplicity of duties of the Attorney General forbid [*sic*] personal attention to all of them. He must, and does, have power to appoint the necessary deputies or assistants to aid in carrying out those duties"). In *Scott v. Association for Childbirth at Home, International*, 85 Ill. App. 3d 311, 407 N.E.2d 71 (1980), the defendants asserted that in the absence of specific legislative authority for the Attorney General to delegate authority, the legislature's intention was that the Attorney General must personally issue writs, thereby lessening the possibility that the broad investigative powers granted to the Attorney General would be exercised oppressively. The

reviewing court drew a parallel between assistant Attorneys General and assistant State's Attorneys and found as follows:

"Although we share defendants' concern with the scope of investigative power given by the Act, we do not agree that the legislature intended that the writs in question must be signed by the Attorney General personally. In *People v. Nahas* (1973), 9 Ill. App. 3d 570, 292 N.E.2d 466, the court examined legislation prohibiting eavesdropping unless done with permission of a party to the conversation and at the request of *'a State's Attorney'* (emphasis added) (Ill. Rev. Stat. 1969, ch. 38, par. 14—2(a)). The court concluded that an Assistant State's Attorney was intended to have the full powers of a State's Attorney when the State's Attorney was absent, sick[,] or otherwise occupied. Even more reasons exist to imply that an Assistant Attorney General has implied power to act on behalf of the Attorney General." *Scott*, 85 Ill. App. 3d at 315, 407 N.E.2d at 74.

The filing of the complaint by an assistant Attorney General in the instant case was not rendered invalid because the Attorney General did not personally sign the document.

### III. Interpretation of Section 4—110 of the Code

■ The defendant contends that he was entitled to the grant of his second motion to dismiss because the State filed no written response to his motion, in which he asserted, *inter alia*, that the order for attachment was invalid because it failed to specify the property to be attached. The absence of a written response is of no import, given that the docket sheet notes of April 9, 2002, indicate that arguments had been heard from both parties on the defendant's February 11, 2002, second motion and the defendant's amendments to that motion to dismiss prior to its denial. The docket sheet notes, which are laudably precise, complete, and legible, do not indicate that the defendant objected to arguing the merits of his amended second motion to dismiss in the absence of a written response to that motion. The defendant does not contend on appeal that he did so. The record contains neither a transcript of the April 9, 2002, hearing nor a transcript substitute as provided for by Supreme Court Rule 323 (166 Ill. 2d R. 323). The defendant, as appellant, is responsible for providing a complete record on appeal, and any doubts arising from an incomplete record will be resolved against him. *Djikas v. Grafft*, 344 Ill. App. 3d 1, 14, 799 N.E.2d 887, 898 (2003). In the absence of a transcript or a substitute therefor, we will assume that the trial court's legal decision to deny the motions to dismiss was correct and predicated on its consideration of the arguments presented.

Section 4—110 of the Code governing prejudgment attachment provides in pertinent part:

"The order for attachment required in the preceding section shall be directed to the sheriff (and, for purpose only of service of summons, to any person authorized to serve summons) \*\*\*. \*\*\* [B]ut *in case* any specific property of the defendant, found in the county, shall be described in the order, then the officer shall attach the described property only, and no other property." (Emphasis added.) 735 ILCS 5/4—110 (West 2002).

We need look no further than the plain language of the statute to parse out its meaning. *Curtis v. Chicago Transit Authority*, 341 Ill. App. 3d 573, 579, 793 N.E.2d 83, 88 (2003). A plain reading of the statute reveals that the language upon which the defendant relies merely requires that in those instances *where only certain property* is described in the attachment order, the sheriff is precluded from attaching any property other than that which is named. Where the attachment order is not expressly limited to specific property, the sheriff may logically attach any of the defendant's property that might be found. The statute does not mandate that the property to be attached must be specifically itemized in the order of attachment in order to have it be efficacious. Because the question raised in the defendant's second amended motion to dismiss was one of law that the court decided after affording both parties the opportunity to argue the second amended motion to dismiss in open court, the lack of a written responsive motion from the State did not require the court to rule in the defendant's favor.

## IV. Service and Notice Requirements

■ The defendant argues for the first time on appeal that he was denied due process because the State failed to mail a copy of the garnishment notice and summons to him within two days of the date on which the garnishees were served, as required by section 12—705(b) of the Code (735 ILCS 5/12—705(b) (West 2002)), governing postjudgment garnishment summonses. His failure to raise the issue in the trial court resulted in the procedural waiver of the question on appeal. 210 Ill. 2d R. 341(e)(7); *Collins v. Lake Forest Hospital*, 343 Ill. App. 3d 353, 360, 798 N.E.2d 143, 148 (2003).

Even had he not forfeited the issue, he would not have prevailed below or on appeal because the State sought garnishment under the *prejudgment* attachment statute, section 4—126 of the Code (735 ILCS 5/4—126 (West 2002)), which lacks the two-day mailing requirement of the postjudgment garnishment statute. Furthermore, the record substantiates that the State complied with the service and notice requirements of section 4—114 of the Code (735 ILCS 5/4—114 (West 2002)). The court entered the order for attachment on January

7, 2002, and the defendant was served with the complaint, the order for attachment, and a summons to answer the complaint with a hearing date of January 31, 2002, on January 10, 2002, thereby complying with section 4—114, which requires service no later than five days after the entry of the order for attachment. Following the January 31, 2002, entry of the garnishment order, the defendant was served on February 1, 2002, with the garnishment summons, interrogatories, the answers to interrogatories filed by the Bank and the Department, and the garnishment order. The defendant's contentions in regard to service, even had they not been procedurally defaulted, are thus without merit.

## CONCLUSION

The defendant's contentions on appeal, all of which raise purely questions of law, are meritless. The trial court's decision granting a summary judgment for the State is therefore affirmed.

Affirmed.

HOPKINS and MAAG, JJ., concur.